# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION | x<br>: |
| Plaintiff, | : |
| v. | : |
| MICHAEL LAUER,<br>LANCER MANAGEMENT GROUP, LLC, and<br>LANCER MANAGEMENT GROUP II, LLC, | : CASE NO.03-80612<br>: CIV-ZLOCH/SNOW<br>: |
| Defendants, | : |
| and | : |
| LANCER OFFSHORE, INC.,<br>LANCER PARTNERS, LP,<br>OMNIFUND, LTD.,<br>LSPV, INC., and LSPV, LLC, | : |
| Relief Defendants. | :<br>x |

# EXHIBITS TO
# MEMORANDUM OF LAW OF CITCO FUND SERVICES (U.S.A.), INC.
## IN OPPOSITION TO THE RECEIVER'S MOTION TO COMPEL DISCOVERY

GILBRIDE, HELLER & BROWN, P.A.
One Biscayne Tower, Suite 1570
Two South Biscayne Blvd.
Miami, Florida 33131
Phone: (305) 358-3580
Fax: (305) 374-1756

*and*

KRAMER LEVIN NAFTALIS & FRANKEL LLP
919 Third Avenue
New York, New York 10022
(212) 715-9100

Attorneys for Defendant Citco Fund
Services (U.S.A.), Inc.

**EXHIBIT 1**

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 03-80612 CIV-ZLOCH

SECURITIES AND EXCHANGE
COMMISSION

      Plaintiff,

        v.                __CASE MANAGEMENT ORDER__

MICHAEL LAUER, LANCER
MANAGEMENT GROUP, LLC, and
LANCER MANAGEMENT GROUP II,
LLC,

      Defendants,

and

LANCER OFFSHORE, INC., LANCER
PARTNERS, LP, OMNIFUND, LTD.,
LSPV, INC., and LSPV, LLC,

      Relief Defendants.
_____/



FILED by _____ D.C.

JAN 8 2004

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD.

      THIS MATTER is before the Court upon the Receiver's Motion for Entry of Case Management Order (DE 42) filed by Marty Steinberg, Esq., court-appointed receiver (hereinafter the "Receiver") of Lancer Management Group, LLC, Lancer Management Group II, LLC, Lancer Offshore, Inc., Omnifund, Ltd., LSPV, Inc., and LSPV, LLC (hereinafter collectively, the "Receivership Entities") in the above-styled cause. The Court has carefully reviewed said Motion, the entire court file and is otherwise fully advised in the premises. Additionally, a hearing regarding the instant Motion was held before the Court on October 28, 2003.

      By prior Orders (DE Nos. 18 and 40) the Court appointed the Receiver to take control and possession the Receivership Entities,

to investigate the affairs of the Receivership Entities and to pursue actions and legal proceedings on behalf of the Receivership Entities and on behalf of the investors and creditors of the Receivership Entities. The Receiver was given broad authority to hire professionals and take actions which the Receiver deems reasonable or necessary to carrying out his appointment. This Order provides additional structure to the Receivership and powers to the Receiver as are necessary to protect and administrate the Receivership Entities. This Order shall in no way limit the rights of the Receiver previously conferred by the Orders Appointing Receiver (DE Nos. 18 and 40) or applicable law. To the extent this Order conflicts with those prior Orders, the prior Orders shall control.

The Court notes that in his proposed Order the Receiver seeks the injunction of all proceedings, suits or actions which may "involve, diminish, or usurp property of the Receiver or the Receivership Entities' estates." Pursuant to the All Writs Act, 28 U.S.C. § 1651 (1994), the Court may issue all writs "necessary to the preservation or exercise of its subject matter jurisdiction." ITT Community Dev. Corp. v. Barton, 569 F.2d 1351, 1359-60 (5th Cir. 1978); see also Rosen v. Cascade Int'l, Inc., 21 F.3d 1520, 1527 n.13 (11th Cir. 1994). Thus where, as in the above-styled cause, a receiver has been appointed the Court may enjoin competing actions to prevent interference with the administration of the

2

receivership.  See SEC v. Credit Bancorp, Ltd., 93 F. Supp. 2d 475, 477 (S.D.N.Y. 2000) (citations omitted).  Nevertheless, "[c]onduct not shown to be detrimental to the court's jurisdiction or exercise thereof cannot be enjoined under the Act."  Mitsubishi Int'l v. Cardinal Textile Sales, 14 F.3d 1507, 1518 n.17 (11th Cir. 1994). In Section IX.A of this Order, therefore, all proceedings, actions and suits which may "diminish or usurp" the assets of the receivership are enjoined, but those which merely "involve" or have a relation to those assets are not.

Accordingly, after due consideration, it is

**ORDERED AND ADJUDGED** as follows:

### I.   STANDING OF RECEIVER

The Receiver shall have the same standing to bring ancillary suits and actions including, without limitation, suits and actions by, on behalf of, or against any or all of the Receivership Entities or Defendant, Michael Lauer (hereinafter "Lauer"), as a common law receiver and as a bankruptcy trustee under Title 11 of the United States Code (the "Bankruptcy Code").  The conferral upon or assertion of such standing by the Receiver shall not divest any other parties in interest of standing under Section 1109 of the Bankruptcy Code in the Connecticut Bankruptcy (as defined below).

### II.   THE SEC'S ENFORCEMENT PROCEEDING

The United States Securities and Exchange Commission's (hereafter the "SEC") enforcement proceeding shall not be

3

consolidated or coordinated with any suits or actions including, without limitation, suits and actions brought by the Receiver, investors or creditors. Specifically, with the exception of the Receiver, no other ancillary party, including, without limitation, investors and creditors, may participate in discovery, the adjudication of issues and/or trial on the merits in the SEC's enforcement proceeding. The SEC's enforcement proceeding shall be governed by an independent scheduling order.

### III. CONNECTICUT BANKRUPTCY CASE

The bankruptcy of In re Lancer Partners, Limited Partnership is currently pending in the United States Bankruptcy Court, District of Connecticut, Case No. 03-50492 (the "Connecticut Bankruptcy"). Two Official Committees have been appointed in the Connecticut Bankruptcy: Committee of Unsecured Creditors (hereinafter the "Creditors' Committee") and Committee of Equity Investors (hereinafter the "Equity Committee" and together with the Creditors' Committee, the "Committees"). This Order is not intended to interfere with the Connecticut Bankruptcy or otherwise usurp the authority of the court in the Connecticut Bankruptcy or the rights of the Committees in that case; provided however that this Order shall not restrict or otherwise limit the Receiver's rights to move the Bankruptcy Court to dismiss or transfer venue of the Connecticut Bankruptcy. This Order establishes procedures for this Proceeding and not the Connecticut Bankruptcy.

4

## IV.  STEERING COMMITTEE

### A.  Formation and Purpose Of Steering Committee

The Receiver is authorized to establish a steering committee (the "Steering Committee") of attorneys to provide input from the investors and creditors to the Receiver in connection with the Proceeding and the administration of the Receivership estate.  The Steering Committee shall not be a voting committee.  The Receiver shall act as the Chairman of the Steering Committee and shall oversee its activities.  All Steering Committee members shall be selected by the Receiver at his sole discretion.  The Court may, however, reduce, increase or change the membership of the Steering Committee.  Each Steering Committee member shall file with the Court an affidavit indicating that such member has no interest (outside the Proceeding) adverse to the Receiver or the receivership estate, similar to that required by the Bankruptcy Code.  The Steering Committee members' participation in the Connecticut Bankruptcy or the proceeding brought by the BVI Financial Services Commission (hereinafter "FSC") in the British Virgin Islands (hereinafter "BVI") shall not be automatically deemed an adverse interest for the purposes of selection of or participation as a member of the Steering Committee.

### B.  Payment of Fees and Costs from Receivership Assets

It is the intent of this Court to compensate Steering Committee members out of the Receivership Estate only when their

5

work has been specifically approved by the Receiver and the Court. Except for good cause shown, and only upon order of the Court, members of the Steering Committee shall be compensated for their reasonable attorneys' or professional fees and costs from the assets of the Receivership Entities only where such fees and/or costs are approved by the Receiver or the Court prior to their commencement. Each of the Receivership Entities shall be jointly and severally liable for all such approved fees and costs of the Steering Committee members allowed in accordance with this Order.

### C.  Steering Committee Document Depository

The Receiver shall maintain, for the benefit of the Steering Committee and its members, a depository of all documents filed and/or produced in this Proceeding, and shall make such documents available to the Steering Committee members and/or their counsel upon request and upon reasonable notice and terms.  The Receiver, at his discretion, may make such documents available in electronic form or through the Internet.

### V.  NOTICE OF PAPERS

### A.  Requests for Notice

To assure proper notice under all circumstances, including expedited matters, a request for service of papers in this Proceeding (a "Request for Notice") may be served upon the Receiver and, for evidentiary purposes, filed with the Court. A Request for Notice shall include: (a) an address at which all documents filed

6

with the Court and served by all entities may be served by U.S. Mail, hand delivery, overnight delivery, and facsimile; (b) the telephone number of each entity requesting service; (c) an electronic mail (e-mail) address for service by e-mail if the entity consents to service by e-mail as set forth in Section V.B. below; (d) the entity's local counsel and the counsel, if any, primarily responsible for matters before the Court but not having an office in the Southern District of Florida.

### B.  Service by Electronic Mail

Because electronic mail service often provides the fastest and most economical method of service, the Receiver requests that all parties with regular access to electronic mail consent to service by electronic mail.  Any party that indicates its electronic mail address in a Request for Notice shall be deemed to have consented to service by electronic mail unless otherwise requested.  Any other party that wishes to consent to service by electronic mail at any time may do so by sending a notice to the Receiver and the Court consenting to service by electronic mail.

### C.  Master Service List

All papers (other than: (i) those seeking _ex parte_ relief in accordance with applicable rules of procedure or order of this Court; and (ii) those solely relating to the SEC's enforcement proceeding) filed in this Proceeding shall be served on the following parties (the "Master Service List"):

7

1. Counsel for the Receiver;

2. All Members of the Steering Committee;

3. The Securities and Exchange Commission – Southeast Regional Office (Attn: Kerry A. Zinn, Esq.);

4. Counsel for the BVI Financial Services Commission in the British Virgin Islands;

5. The United States Trustee responsible for any Title 11 bankruptcy cases ancillary to this Proceeding;

6. Counsel for the Committees and other counsel for any official, statutory creditors' committees appointed in any Title 11 bankruptcy cases ancillary to this Proceeding;

7. Any trustee appointed in any Title 11 bankruptcy case ancillary to this Proceeding;

8. Any parties and entities (including local government units) previously known by the party serving the paper to be served to have a particularized interest in the subject of such paper; and

9. Any real parties in interest that file a Request for Notice and serve the same upon the Receiver prior to the filing of the paper to be served.

The Receiver shall be responsible for maintaining the Master Service List, which shall be updated monthly. An updated Master Service List shall be made available to any party in interest by

8

request presented to counsel for the Receiver.

D.  Method of Service of Requests for Relief and Other Papers

All entities seeking relief from this Court in this Proceeding are authorized to serve such requests for relief and other papers by U.S. Mail, hand delivery, overnight delivery, facsimile or, if a party to be served has so consented or deemed to have consented, by electronic mail.  Service on the Receiver shall be by electronic mail and one of the following: U.S. Mail, hand delivery, overnight delivery, or facsimile.  Any party that cannot serve a paper by electronic mail must serve the paper on the Receiver by hand delivery, overnight delivery, or facsimile.

1.  Service of Responses to Requests for Relief Served Via Facsimile, Hand Delivery, or Electronic Mail

Unless otherwise ordered by the Court, if any entity files any request for relief and serves the same by facsimile, hand delivery, or electronic mail, then all parties shall have ten (10) business days from the date of service of such request for relief to file with the Court and serve upon the Receiver, the Master Service List and the party seeking relief an objection or opposition to such motion, application, notice, or other paper.

2.  Service of Responses to Requests for Relief Served Via U.S. Mail

Unless otherwise ordered by the Court, if any entity files any request for relief and serves the same by U.S. Mail, then all parties shall have twelve (12) business days from the date of

9

service of such request for relief to file and serve upon the Receiver, the Master Service List, and the party seeking relief an objection or opposition to such motion, application, notice, or other paper.

3.  Service of Response to Request for Relief Set for Hearing

Unless otherwise ordered by the Court, if a request for relief has been set for hearing, the Court shall not consider any response or objection to such request for relief or any reply to such response or objection filed less than three (3) business days before the date of such hearing.

4.  Failure to Timely Object

If no party timely objects to a motion, application, notice, or other paper filed, then any and all relief requested therein may be granted by the Court without the necessity for any hearing or further consideration.  Nothing in this Order, however, shall bar any party from requesting a hearing despite the absence of a response or objection.

5.  Service of Replies

Unless otherwise ordered by the Court, all replies to objections or responses to requests for relief shall be filed within five (5) business days from the filing date of such objection or response.

6.  Service of Orders

All parties submitting orders for entry by the Court shall

10

serve a conformed copy of any entered order on the Receiver and the SEC within two business days of entry and shall serve such entered order on the Master Service List and any other interested parties within five business days after entry.

## 7.  Certificates of Service

All parties shall include in any papers filed with the Court a Certificate of Service identifying all parties served and the manner of service.

## 8.  Notice of Objection Procedures

All filings seeking relief shall include a statement of the applicable deadline for filing and serving objections as provided in this Order as follows:

> **If no party files and serves an objection to the relief requested herein on or before [DATE OF OBJECTION DEADLINE], the relief shall automatically be deemed granted without further order of this Court.**

## 9.  Special Notice Procedures

Nothing herein shall prejudice the right of any entity to move the Court to further limit or expand notice of requests for relief and/or other contested matters upon a showing of good cause, including, without limitation, the right to file a motion seeking emergency or ex parte relief.

## 10.  Negative Notice Procedures

Unless otherwise ordered by the Court, the Receiver may

11

procure authority to do the following via ten (10) days negative notice:

    1.  Abandon property of the Receivership Entities that is burdensome or of inconsequential value;

    2.  Settle, compromise, or dismiss contested matters, adversary proceedings, or any other ancillary litigation;

    3.  Retain professionals, subject to the conditions set forth herein; and

    4.  Compensate professionals from assets of the Receivership Estate, subject to the conditions set forth herein.

To procure such relief via negative notice, the Receiver shall serve on all parties on the Master Service List a notice indicating the Receiver's intent (a "Notice of Intention") and briefly describe the grounds therefor. The Notice of Intention shall state the following:

**If no party files and serves an objection to this Notice on or before [DATE OF OBJECTION DEADLINE] the Receiver shall be automatically empowered to perform the intended action without further order from this Court.**

12

## VI.  OMNIBUS HEARINGS

### A.  All Matters to be Heard

The following contested matters will be considered and/or heard only at periodic omnibus hearings scheduled in advance by the Court (the "Omnibus Hearings"), unless the Court orders otherwise: all motions, pleadings, applications, and other requests for relief, all objections and responses, and replies thereto, and all other matters.

### B.  Setting Hearings

### 1.  Ordinary Scheduling Procedures

Motions shall be set on the next Omnibus Hearing date that is at least ten (10) days after the filing of the request for relief but at least seven (7) days prior to the Omnibus Hearing.  Each motion or request for relief shall be accompanied by a form "Notice of Hearing".

### 2.  Emergency Hearings

Notwithstanding any procedure established herein, this Order shall not restrict any interested party from requesting an emergency hearing pursuant to the Local Rules of this Court.

### C.  First Three Omnibus Hearings

To the extent necessary, the Court has set aside the following dates and times for the first three Omnibus Hearings:

1.    11:30 am on the 20th day of February, 2004.

2.    10 am on the 23rd day of April, 2004.

13

3.    10 am on the 18th day of June, 2004.

### D.   Future Hearings

At or before the last Omnibus Hearing scheduled above, the Receiver or other party in interest may request scheduling of additional Omnibus Hearings.  Entities may contact Craig V. Rasile, Hunton & Williams LLP, 1111 Brickell Avenue, Suite 2500, Miami, FL 33131, Phone (305) 810-2500, Fax (305) 810-2460, for information concerning future Omnibus Hearings scheduled by the Court.

### E.   Agenda Letters

No later than twenty-four (24) hours before each Omnibus Hearing, the Receiver shall file with the Court a letter setting forth each matter to be heard at such hearing and the proposed order in which such matters will be heard (the "Agenda Letter"). The Receiver shall serve the Agenda Letter on the Master Service List, on each entity affected by any item indicated in the Agenda Letter and on each entity that has filed and served papers with this Court relevant to such hearing in accordance with the procedures set forth herein.

### F.   The SEC's Enforcement Proceeding

The SEC's enforcement proceeding is not subject to Sections VI. A through F of this Order.   Any motions, pleadings, applications or other requests for relief, objection, responses and replies in the SEC's enforcement proceeding may be considered and/or heard at any time as determined by the Court.

14

## VII.   RETENTION AND COMPENSATION OF PROFESSIONALS

### A.   Retention of professionals

#### 1.   Notice of Retention

The Receiver, or any attorney, accountant, consultant, agent or other professional being engaged by the Receiver pursuant to the provisions of the Receivership Order (a "Professional") shall file with the Court a notice indicating the Receiver's intent to retain a Professional (a "Notice of Intention to Retain Professional"). The Notice of Intention to Retain Professional shall identify the name of the professional firm, the individual(s) who will render professional services, the scope and terms of the retention of such Professional, the effective date of the retention, and the proposed hourly rates to be charged by such Professional. Any material additional engagement terms shall be disclosed or attached to the Notice of Intention to Retain Professional along with an affidavit of the Professional stating that the Professional does not hold or represent any interest adverse to the Receivership Estate and is a "disinterested" person.

#### 2.   Retention of Former Professionals

The Receiver may retain a Professional that has represented the Receivership Entities prior to the Receiver's appointment if such Professional does not represent or hold any interest adverse to the Receiver or the Receivership Estate with respect to the matter on which such Professional is to be employed.

15

<u>3.  Objections to Retention</u>

If no objection to a Notice of Intention to Retain
Professional is timely filed in accordance with this Order, then
the engagement proposed in the Notice of Intention to Retain
Professional shall be deemed approved by the Court in all respects
without further order.

<u>B.  Compensation of Professionals</u>

<u>1.  Interim Applications for Compensation</u>

Any Professional, any Steering Committee member (as provided
in Section IV.B. above) or the Receiver, on behalf of himself or
any Professional, may file a Request for Interim Compensation or a
Notice of Intention to Pay Interim Compensation (both a "Notice of
Compensation") no less than every sixty (60) days.  All Notices of
Compensation shall set forth the amount of fees and costs
requested; a summary of prior Notices of Compensation reflecting
the amount of fees previously requested, awarded and paid; and a
brief summary of the services rendered during the relevant period.
All Notices of Compensation shall have attached as an exhibit a
schedule broken down into categories pre-determined by the Receiver
showing the amount of fees and costs requested in each category,
including a list of the billing persons, the hourly rates and
amount of time spent in each category.  No compensation will be
paid by the Receiver before thirty (30) days of service of a Notice
of Compensation to ensure that even if no party in interest objects

16

within ten (10) days of service, the Court will have an additional twenty (20) days to consider the Notice of Compensation and, if the court deems necessary, schedule a hearing on the Notice of Compensation.

## 2. Objections to Interim Compensation

All objections to a Notice of Compensation must be filed within ten (10) days after service of the Notice of Compensation. If an objection is timely filed, the Court shall set the matter for hearing or enter an order allowing in full, allowing in part or disallowing the Notice of Compensation as the Court deems appropriate.

## 3. Court Consideration of Unopposed Notices

If no objection is filed within ten (10) days of service of a Notice of Compensation, then the Court will take the Notice under advisement in order to evaluate the reasonableness of the requested compensation. Within twenty (20) days of the expiration of the time to file an objection, the Court shall either: (i) issue an order allowing in full, allowing in part, or disallowing the requested compensation; or (ii) set the Notice of Compensation for hearing at the next available omnibus hearing date or such other date the Court deems appropriate. If the Court does not enter an order on an unopposed Notice of Compensation or set an unopposed Notice for hearing, within the period prescribed herein then the compensation requested in the unopposed Notice of Compensation

17

shall be deemed allowed as requested, without further order of the Court.

### 4. Resolution of Objections and Amended Notices

If the applicant and an objecting party are able to resolve an objection to a Notice of Compensation to the satisfaction of the Receiver, without judicial intervention, then the Receiver shall file and serve a Notice of Intention to Pay Agreed Amended Compensation setting forth the manner in which the objection was resolved, which notice shall be executed by both the applicant and the objecting party. Such notice shall be served by the Receiver upon all parties on the Master Service List and shall be subject to approval and payment as if it were an original Notice of Intention to Pay Interim Compensation.

### 5. Payment of Fees by Receiver

The Receiver shall pay fees and expenses approved by the Court to the extent the Receiver is in possession of sufficient funds in the Receivership Estate at such time.

### 6. Final Applications for Compensation

At the conclusion of this case or upon the termination of services by the Receiver, Professional or any Steering Committee member compensated pursuant to this Section, such entity shall file a Final Application for Allowance of Compensation which shall not be subject to automatic or negative notice allowance but shall be considered by the Court notwithstanding the existence or absence of

18

any timely objections.  All interim fees and expenses paid are subject to disallowance and/or disgorgement until entry of the Order Granting a Final Application for Compensation.

### VIII.  COMMUNICATIONS AND CONFIDENTIALITY

### A.  Maintenance of Confidentiality

The Receiver, the FSC and the Steering Committee share a common interest in maximizing the recovery for the investors and creditors of the Receivership Entities.  Accordingly, communications among the Receiver, the FSC, the Steering Committee and its members and their respective counsel (collectively the "Confidential Parties") which contain privileged communications, work product information, common interest or joint defense information, critical self-analysis information, and other applicable privileges are hereby deemed confidential and shall be protected from disclosure to any third party under such privileges.

### 1.  Confidential Materials

The Confidential Parties also conclude that, from time to time, their mutual interests will be best served by sharing privileged, work product, common interest or joint defense, critical self-analysis or other similar materials, including, but not limited to, documents, factual material, mental impressions, memoranda, interview reports, notes, opinions, legal analysis and advice and other matters, including the confidences of each other (collectively the "Confidential Materials").  Confidential

19

Materials, whether shared as herein contemplated or not, are and would be privileged from disclosure to adverse or other parties as a result of the attorney-client privilege, the attorney work-product doctrine, common interest or joint defense doctrines, the critical self-analysis doctrine and other applicable privileges.

## 2.  Use of Confidential Materials

Any Confidential Materials exchanged between or among the Confidential Parties, and the information contained therein, and any other confidences exchanged between or among counsel, shall be used solely in connection with preparing for and prosecuting matters in this Proceeding, the Connecticut Bankruptcy, and, where appropriate, in proceedings ancillary to this Proceeding. Furthermore, no information, communications or defense materials exchanged among the Confidential Parties may be used in any proceeding involving any Confidential Party that may be entitled to claim any privilege with respect to such information, communications or defense materials without the express written consent of such Confidential Party. If any Confidential Materials are to be used in deposition or other discovery procedures, the parties engaged in such discovery shall execute a separate confidentiality agreement governing the use of such documents in discovery.

## 3.  Consent of Interested Confidential Parties

No Confidential Party shall disclose information,

20

communications or defense materials received from another Confidential Party, or the contents thereof, to anyone except their respective clients, attorneys within their firms, or their employees, agents or experts, without first obtaining the written consent of any Confidential Party that may be entitled to claim any privilege with respect to such materials, as well as the written consent of the Party's counsel. Further, no information, communications or defense materials exchanged under this agreement, may be used in any proceeding involving any Party who may be entitled to claim any privilege with respect to such information, communications or defense materials without the express written consent of such Party and such Party's counsel.

## 4. No Obligation to Share Confidential or Other Materials

While it is the intent that Confidential Materials be exchanged between and among Confidential Parties, nothing in this Order shall be construed as giving rise to any obligation on behalf of any Confidential Party to share any information, communications or Confidential Materials with any other Confidential Party.

## 5. Termination of Confidential Relationship

The Court may, upon request by a Confidential Party and after notice and a hearing, terminate the confidential relationships established herein with respect to any Confidential Party. The effect of such termination shall be prospective only and will not affect the Confidential Parties' obligation to hold confidential

21

all Confidential Materials, communications and information exchanged prior to the entry of an order terminating a confidential relationship established by this Order. Moreover, termination of any of the confidential relationships established by this Order shall not create any conflict of interest and shall not be used as a basis to disqualify the counsel of any Confidential Party.

6.  Withdrawal of Confidential Party

Each Confidential Party may withdraw or voluntarily terminate prospectively by written notice to all Confidential Parties should it be determined that it is no longer in its interest to continue a joint defense. The effect of withdrawal shall be prospective only and will not affect the Confidential Parties' mutual obligation to hold confidential all defense materials, communications and information exchanged prior to receipt of written notice of withdrawal. Moreover, the Confidential Parties agree that the act of withdrawal will not create any conflict of interest and will not be used as a basis to disqualify the counsel of the withdrawing Party from continuing to represent such Party. To the extent that withdrawal might be considered to create a conflict of interest, however, the Confidential Parties are deemed to have waived any such conflict.

B.  Penalty for Breach of Confidentiality

The Court hereby finds that any violation of the confidentiality provisions of this Order shall be the cause of

22

irreparable harm to any Confidential Parties affected by such breach, and finds that monetary damages may not provide sufficient relief for such a breach. In the event of a violation of the confidentiality provisions of this Order, the Court shall impose any specific performance or injunctive relief necessary to prevent the irreparable harm flowing from such breach, in addition to monetary sanctions if appropriate.

### C. Retroactive Application

All communications involving Confidential Materials among the Confidential Parties prior to the date of this Order are subject to the confidentiality provisions of this Order.

### IX.  ANCILLARY PROCEEDINGS

### A. Injunction

The Court hereby enjoins any party (excluding the Receiver, the SEC, the National Association of Securities Dealers (the "NASD"), and/or any other regulatory body or law enforcement agency of the United States or its constituent states) with notice of this Order from initiating, maintaining, or in any way prosecuting in any other court any proceeding, suit, or action against any of the above-named Defendants and/or Relief Defendants. Additionally, the Court hereby enjoins any party (excluding the Receiver, the SEC, the NASD, any other regulatory body or law enforcement agency of the United States or its constituent states or any party with the express written consent of the Receiver or this Court) with notice

23

of this Order from initiating, maintaining, or in any way prosecuting in any court any proceeding, suit or action that may diminish or usurp property of the Receiver or the Receivership Entities' estates, including, but not limited to, causes of action that the Receiver may have standing to bring or that may belong to the Receiver, any investors, any class or group of investors, and/or any member of the Steering Committee against the Receivership Entities' former principals, professionals or other third parties. Unless otherwise expressly authorized by the Receiver or the Court, such proceedings, suits, and actions must be brought in the form of a proceeding ancillary to this Proceeding pursuant to this Order. The Receiver may provide effective notice of the channeling injunction contained in this Order by publication as provided for in the Federal Rules of Civil Procedure, or by filing notice of this Order in any such proceedings, suits and actions brought prior to the entry of this Order.

### B. Proceedings Ancillary to this Case

Any party may initiate a proceeding ancillary to this Case by: (i) filing an ancillary complaint in this Court and serving such complaint in compliance with the Federal Rules of Civil Procedure; (ii) obtaining a court order transferring the venue of any of the Receivership Entities' cases filed under any chapter of the Bankruptcy Code in another district; or (iii) obtaining an order, administrative decision, or other document to which comity attaches

24

providing for the involvement of this Court and/or the Receiver in any of the Receivership Entities' foreign insolvency, bankruptcy, administrative or liquidation proceedings.

1.  Maintenance of Ancillary Proceeding Files and Transfer to This Court

The Clerk of Court shall assign all ancillary proceedings initiated by the Receiver or any other party pursuant to the Receivership Order or Section IX.B. of this Order a separate case number, and all such ancillary proceedings shall be transferred to this Court and subject to this Order and subsequent pretrial orders.

C.  Other Bankruptcy Proceedings

The Receiver is hereby authorized to file cases under any chapter of the Bankruptcy Code or file motions to transfer venue of any pending or subsequently filed bankruptcy cases for any of the Defendants or Relief Defendants that the Receiver deems appropriate.  All such cases shall be filed in or transferred to the Southern District of Florida and the reference shall be withdrawn to this Court by separate Order.

X.  REPORTING REQUIREMENTS

After the initial report required by the Receivership Order, the Receiver shall file and serve the next four status reports with the Court quarterly and will file all other reports thereafter semi-annually.

25

## XI.   PRESERVATION OF DOCUMENTS

### A.   Retention Injunction

Each of the parties to this Proceeding, including the Confidential Parties, each of the parties to any proceeding ancillary to this Proceeding, and any person or entity with notice of this Order that provided products or services to the Receivership Entities and/or received funds from the Receivership Entities, and their respective officers, agents, servants, employees, and attorneys, and all persons in active concert or participation with them who receive any notice of this Order are hereby restrained and enjoined from altering, interlining, destroying, permitting the destruction of, or in any other fashion changing any "document" in the actual or constructive care, custody or control of such person, wherever such document is physically located ("Documents").   Such persons are also enjoined from changing the location of any such Documents except to facilitate compilation, review, or production to the Receiver.   The Receiver may provide effective notice of the retention injunction contained in this Order by service in accordance with this Order or publication as provided for in the Federal Rules of Civil Procedure.

### B.   Scope of Retention Injunction

### 1.   Definition of "Document"

"Document" shall mean any writing, drawing, film, videotape,

26

chart, photograph, phonograph record, tape record, mechanical or electronic sound recording or transcript thereof, retrievable date (whether carded, taped, coded, electrostatically or electromechanically recorded, or otherwise), or other data compilation from which information can be obtained, including, but not limited to, notices, memoranda, diaries, minutes, purchase records, purchase invoices, market data, correspondence, computer storage tapes, computer storage cards or discs, computer memories, books, journals, ledgers, statements, reports, invoices, bills, vouchers, worksheets, work papers, work orders, sale orders, purchase orders, jottings, notes, letters, abstracts, audits, financial statements, charts, checks, wire transfer confirmations, diagrams, drafts, recordings, instructions, lists, logs, orders, recitals, telegram messages, telephone bills and logs, resumes, summaries, compilations, computations, and other formal and informal writings or tangible preservations of information.

## 2.  Relevance Limitation

The document retention injunction contained herein pertains only to documents containing information that may be relevant to, or may lead to the discovery of information relevant to, the activities of the Receivership Entities or Lauer, the activities of the Receivership Entities' or Lauer's portfolio companies, and the activities of any entity receiving monies from or performing services of any kind for the Receivership Entities or Lauer. Any

Received  01-09-04  14:22       From-305-523-5226 USDC       To-HUNTON WILLIAMS       Page  028

document described or referred to in any discovery request made during this litigation shall, from the time of the request, be treated for purposes of this order as containing such information unless and until the court rules such information to be irrelevant.

### 3.  Disputes Over Retention

Counsel shall confer to resolve questions as to what documents are outside the scope of the document retention injunction and as to an earlier date for permissible destruction of particular categories of documents. If counsel are unable to agree, then any party may apply to the court for clarification or relief from the document retention injunction. Notwithstanding this provision, a party waives any objection to the destruction of any document by failing to object to such destruction within sixty (60) days after receiving notice of another party's intention to destroy such document.

### 4.  Implementation; Responsible Individual

Each party to this Case (excluding the SEC) shall, within ten (10) days after receiving this Order, designate an individual who shall be responsible for ensuring that the party carries out the requirements of this Order.

### XII.  CLAIMS PROCEDURES

#### A.  Application of this Order

All persons or entities with claims or demands against any Receivership Entity must present their claims to the Receiver in

28

accordance with this Order.   This requirement applies to all persons and entities, whether or not parties to this Proceeding. Persons or entities who have already submitted claim forms to the Receiver are not required to file additional claim forms.

### B.   Claim Requirements

All claims filed against the Receivership Entities in this Proceeding shall be substantially in the form provided by the Receiver.  Each claim shall be signed by the Claimant under penalty of perjury and shall be filed against the Receivership Entity that is obligated or liable to Claimant.  The Receiver shall provide the claim form by electronic mail, by hard copy or by posting on a website.

### C.   Claims Bar Date

The claims bar date is April 1, 2004.

### 1.   Notice of Claims Bar Date

a)   Mail Notice

The Receiver shall provide notice of the claims bar date indicated in this Section of this Order and a form for filing any claim to all parties on the Master Service List and upon all known investors and creditors of the Receivership Entities, by bulk rate U.S. Mail, on or before January 23, 2004.  The Receiver is directed to create an appropriate form of notice.

b)   Publication Notice

The Receiver is directed to publish, before January 23, 2004,

29

a legal notice for three consecutive weekdays in the USA Today and such other publications the Receiver deems appropriate under the circumstances, for the purpose of informing all persons of the claims bar date.

### D. Bar Date Injunction

All creditors, claimants, and other persons failing to present claims and supporting proof to the Receiver postmarked on or before the claims bar date will be forever barred from participating in any distribution of the assets of the Receivership Entities and shall be further barred from asserting set-offs or recoupment of any kind whatsoever against any Receivership Entity or its assets.

### E. Claims Review Process

After the Receiver has received the executed claim forms and the claims bar date has passed, the Receiver shall file a motion for an order detailing and approving the criteria and methodology to be used in reviewing the claims and their attached documentation to determine whether the claims should be allowed in full, allowed in part, or disallowed.

### 1. Insufficient Claim Documentation

If the Receiver determines that a claim form has been improperly completed and/or that a claim lacks sufficient supporting documentation, then the Receiver shall send the claimant a notice of insufficient documentation indicating that the claimant

30

shall have thirty (30) days in which to supplement the documentation supporting the claim at issue. Failure to timely supplement shall result in a recommendation of disallowance.

2.  Omnibus Objections by Receiver

Upon completion of the Receiver's review of the claims, the Receiver shall file with the Court an accounting of all claims submitted. The Receiver shall also file one or more omnibus objections specifying those claims which the Receiver recommends for disallowance, in whole or in part, and the basis for each objection (the "Objection").

The Receiver shall serve the Objection upon (i) any party holding a claim recommended for disallowance, and (ii) the SEC. The Objection shall state briefly the reasons for the recommendation of disallowance and the amount, if any, the Receiver recommends for allowance. A claimant that disputes the Receiver's recommendation shall file and serve the Receiver with a response to the Receiver's Objection within thirty (30) days after the mailing of the Objection. Failure to timely file and serve a response will result in adoption of the Receiver's recommendation. The Court shall set a hearing on any such responses which have not been resolved by agreement with the Receiver within thirty (30) days after the filing of the response.

XIII. PUBLIC ACCESS VIA TOLL FREE NUMBER AND WEBSITE

The Receiver shall establish and maintain a toll-free number,

31

currently (866) 285-5897, to receive investor and creditor questions. The Receiver may also be contacted via electronic mail at lancer@hunton.com. Additionally, the Receiver shall maintain an informational website at the following:

    http://www.hunton.com/news_events/legal_dev/Lancer_Re
    ceivership_Information.html

which website may contain status reports and selected pleadings from this Proceeding or any proceedings ancillary hereto, which reports and/or pleadings shall be chosen and displayed at the Receiver's sole discretion.

    **DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 8th day of January, 2004.

                              WILLIAM J. ZLOCH
                              Chief United States District Judge

Copies furnished:

All attorneys of record

Received  01-09-04  14:22      From-305-523-5226 USDC       To-HUNTON WILLIAMS      Page 033

**EXHIBIT 2**

CASE # _03-CV-80612-WUZ_



# "Do Not Scan or Copy This Transcript."

DE # 107

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

SECURITIES & EXCHANGE COMMISSION, )
                                  )
            PLAINTIFF,            )        CASE NUMBER
                                  )     03-80612-CIV-ZLOCH
                                  )
        VS.                       )
                                  )
MICHAEL LAUER, LANCER MANAGEMENT )     THIS VOLUME:
GROUP, LLC, AND LANCER MANAGEMENT)     PAGES 1 - 209
GROUP II, LLC,                    )
                                  )
            DEFENDANTS.           )
                                  )
AND                               )
                                  )
LANCER OFFSHORE, INC.,            )
LANCER PARTNERS, LP.,             )
OMNIFUND, LTD.,                   )
LSPV, INC., AND                   )
LSPV, LLC,                        )
                                  )
            RELIEF DEFENDANTS.    )
_____)

TRANSCRIPT OF STATUS CONFERENCE AND MOTION HEARING

HAD BEFORE THE HONORABLE WILLIAM J. ZLOCH, IN FORT

LAUDERDALE, BROWARD COUNTY, FLORIDA, ON TUESDAY, OCTOBER 28,

2003, IN THE ABOVE-STYLED MATTER.

CARL SCHANZLEH
OFFICIAL COURT REPORTER
U. S. COURTHOUSE
299 EAST BROWARD BOULEVARD, 202B
FORT LAUDERDALE, FLORIDA 33301
954 769-5488



1  APPEARANCES:

2  FOR THE PLAINTIFFS:     KERRY A. ZINN,
                           CHRISTOPHER L. MARTIN, AND
3                          CRAIG RASILE, ESQS.

4  FOR THE DEFENDANTS:     RICHARD M. ASCHE, AND
                           NEAL R. SONNETT, ESQS.
5
   ALSO PRESENT:           ERIC A. HENZY, ESQ.
6                          SCOTT M. BERMAN, ESQ.
                           MICHAEL G. DAVIES, ESQ.
7                          ADAM M. MOSKOWITZ, ESQ.
                           HARLEY S. TROPIN, ESQ.
8                          DAVID MILAN, ESQ.
                           AARON S. PODHURST, ESQ.
9                          JEFFREY BAST, ESQ.
                           KEVIN M. ECKHARDT, ESQ.
10                         RICHARD DAVIS, ESQ.
                           SALVATORE A. BARBATANO, ESQ.
11

12

                          **TABLE OF CONTENTS**
13

   **WITNESSES:**                    **DIRECT   CROSS REDIRECT RECROSS**
14
   MARTY STEINBERG . . . . . . . . . . . . 107      119
15
   MARTY STEINBERG . . . . . . . . . . . . . . . . 134      142
16
   ROBERT W. LOWRY . . . . . . . . . . . . 146      151      163      164
17
   MICHAEL LAUER . . . . . . . . . . . . . 167      189
18
   MICHAEL LAUER . . . . . . . . . . . . . . . . 194      197
19
                          **INDEX TO EXHIBITS**
20
   **EXHIBITS**                           **MARKED FOR        RECEIVED**
21                                        **IDENTIFICATION   IN EVIDENCE**

22 **DESCRIPTION**                        **PAGE      LINE     PAGE     LINE**

23 PLAINTIFF EXHIBIT 9 . . . . . . . . . . . . . . . . . . . . . . . . 180      15

24 PLAINTIFF EXHIBITS 10 AND 11 . . . . . . . . . . . . . . . 199      10

25

# NOT

# SCANNED

**PLEASE REFER TO COURT FILE**

**EXHIBIT 3**



HUNTON & WILLIAMS LLP
1111 BRICKELL AVENUE
SUITE 2500

TEL      305  810  2500

CRAIG V. RASILE
DIRECT DIAL: 305-810-2579
EMAIL: crasile@hunton.com

FILE NO: 64036.000002

January 22, 2004

## VIA FACSIMILE AND U S MAIL

Joel H. Bernstein, Esq.
Goodkind Labaton Rudoff & Sucharow LLP
100 Park Avenue
New York, NY 10017

> Re:   Bruhl v. PricewaterhouseCoopers International Ltd. et al.
>        Case No. 03-CV-6644

Dear Mr. Bernstein:

As you are aware, Hunton & Williams LLP represents Marty Steinberg, Esq., court-appointed receiver (the "Receiver") of Lancer Management Group LLC, Lancer Management Group II LLC, Lancer Offshore Inc., Omnifund Ltd., LSPV Inc., LSPV LLC, Alpha Omega, Inc., and G.H. Associates LLC (collectively the "Receivership Entities") and responsible person for Lancer Partners L.P.

On January 8, 2004, the United States District Court for the Southern District of Florida (the "Receivership Court"), presiding over the administration of the Receivership Entities in the case styled *SEC v. Lauer et al.*, Case No. 03-80612-CIV-ZLOCH (the "Receivership Case"), entered a Case Management Order that provides for, among other things, a channeling injunction barring the initiation and prosecution of actions that may diminish or usurp property of the Receivership Entities' estates in any court other than the Receivership Court. Specifically, Article IX § A of the Case Management Order provides that:

> the Court hereby enjoins any party ... with notice of this order
> from initiating, maintaining, or in any way prosecuting in any
> court any proceeding, suit or action that may diminish or usurp
> property of the Receiver or the Receivership Entities ...
> including, but not limited to, causes of action that the ...
> may have standing to bring or that may belong to the Receiver ...
> any investors, any class or group of investors ... against the
> Receivership Entities' former principals, professionals or other
> third parties ... such proceedings, suits, and actions ... ...

ATLANTA   AUSTIN   BANGKOK   BRUSSELS   CHARLOTTE   DALLAS   HONG KONG   KNOXVILLE
LONDON   McLEAN   MIAMI   NEW YORK   NORFOLK   RALEIGH   RICHMOND   SINGAPORE   WASHINGTON
www.hunton.com

Joel H. Bernstein
January 22, 2004
Page 2

brought in the form of a proceeding ancillary to this Proceeding
pursuant to this Order.

A copy of the Case Management Order is enclosed for your reference.

It is the Receiver's position that the above-referenced action filed by your firm before
the United States District Court for the Southern District of New York (the "New York Court")
threatens to diminish and/or usurp property of the Receiver and the Receivership Entities'
estates. Additionally, the above-referenced action alleges causes of action that the Receiver
may have standing to bring and that belong to the Receiver and/or investors. Accordingly, the
continuing maintenance of the above-referenced action in the New York Court violates the
channeling injunction articulated in Article IX § A of the Case Management Order.

We hereby request that you immediately seek to transfer the above-referenced action to
the Receivership Court as a proceeding ancillary to the Receivership Case pursuant to the Case
Management Order to ensure compliance with the channeling injunction. If you have any
questions with respect to this request, do not hesitate to contact us.

Thank you for your anticipated cooperation.

Sincerely yours,

Craig V. Rasile

cc:    Marty Steinberg, Receiver
       Lynda Grant, Esq.

64036.000002 MIAMI 195670v1

**EXHIBIT 4**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

Case No.  03-80612 CIV-ZLOCH

**NIGHT BOX
FILED**

**FEB 25 2004**

CLARENCE MADDOX
CLERK, USDC/SDFL/FTL

SECURITIES AND EXCHANGE COMMISSION

Plaintiff,

v.

MICHAEL LAUER,
LANCER MANAGEMENT GROUP, LLC, and
LANCER MANAGEMENT GROUP II, LLC,

Defendants,

and

LANCER OFFSHORE, INC., LANCER
PARTNERS, LP, OMNIFUND, LTD.,
LSPV. INC., and LSPV, LLC,

Relief Defendants.

_____

## NOTICE OF FORMATION OF STEERING COMMITTEE

Marty Steinberg (the "Receiver"), court-appointed receiver of Lancer Management

Group LLC, Lancer Management Group II LLC, Lancer Offshore Inc., Omnifund Ltd., LSPV

Inc., LSPV LLC, Alpha Omega Inc., and G.H. Associates LLC (collectively the "Receivership

Entities") and responsible person for Lancer Partners L.P., hereby files this Notice of Formation

of Steering Committee pursuant to Article IV § (A) of the Court's Case Management Order

dated January 8, 2004 (the "Case Management Order").  Pursuant to Article IV. § (A) of the

Case Management Order, the Receiver has established a steering committee (the "Steering

Committee") to provide input from the investors and creditors in connection with this Proceeding

and the administration of the Receivership Entities' estates.  The Receiver has selected the

following initial members of the Steering Committee:

1.  Marty Steinberg, Esq.
    c/o Hunton & Williams LLP
    1111 Brickell Avenue
    Suite 2500
    Miami, FL 33131
    (305) 810-2500

2.  Craig V. Rasile, Esq. or Andrew Zaron, Esq. or Jeffrey Bast, Esq.
    Hunton & Williams LLP
    1111 Brickell Avenue
    Suite 2500
    Miami, FL 33131
    (305) 810-2500

3.  Harley Tropin, Esq.
    Kozyak Tropin & Throckmorton P.A.
    2800 Wachovia Financial Center
    200 South Biscayne Boulevard
    Miami, FL 33131-2335
    (305) 372-1800

4.  Aaron Podhurst, Esq.
    Podhurst & Orseck
    25 West Flagler Street
    Suite 800
    Miami, FL 33130
    (305) 358-2800

5.  Joel H. Bernstein, Esq.
    Goodkind Labaton Rudoff & Sucharow LLP
    100 Park Avenue
    New York, NY 10017
    (212) 907-0869

6.  Michael A. Hanzman, Esq.
    Hanzman, Criden, P.A.
    Commerce Bank Building
    220 Alhambra Circle, Suite 400
    Coral Gables, Florida 33134
    (305) 357-9000

7.  Special Counsel to the Receiver
    (to be named)

2

The Receiver may, at his sole discretion, elect to add additional members to the Steering

Committee or elect to remove these initial members.

Date:   February 25, 2004
        Miami, Florida

                              Respectfully submitted,

                              HUNTON & WILLIAMS, LLP
                              *Counsel for the Receiver*
                              1111 Brickell Avenue
                              Suite 2500
                              Miami, FL 33131
                              Tel:  (305) 810-2500
                              Fax:  (305) 810-1653


                              _____
                              Jeffrey I. Bast (FBN 996343)
                              Kevin M. Eckhardt (FBN 412902)

                                    3

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via U.S.

Mail upon the parties listed on the attached Service List this 25th day of February, 2004.

_____

Jeffrey P. Bast, Esq.

4

# SEC/LANCER MANAGEMENT ET AL.
## SERVICE LIST

Kerry A. Zinn
Senior Trial Counsel
U.S. Securities & Exch. Commission
801 Brickell Avenue - Suite 1800
Miami, Fl 33131

Eric A. Henzy
Reid and Riege, P.C.
One Financial Plaza
Hartford, CT 06103

Stephen R. Field, Esq.
Counsel for World Wireless
Communications, Inc.
Law Offices of Stephen R. Field
240 Madison Avenue
New York, NY 10016

Scott M. Berman
Brown, Rudnick, Berlack, Israels LLP
120 West 45th Street
New York, New York 10036

Mr. Dylan Wolff
Managing Director Norges Investor Value
P.O. Box 1863 Vika
0124 Oslo
NORWAY

Kevin E. Gunther
27 Reid Street, 1st Floor
P.O. Box HM 3051
Hamilton HM NX
Bermuda

Michael Lauer, pro se
7 Dwight Lane
Greenwich, CT 6831

Salvatore A. Barbatano
Foley & Lardner
150 W. Jefferson
Suite 1000
Detroit, MI 48226-2616

Gerry LaBush, Esq.
711 Third Avenue
Suite 1505
New York, New York 10017

Jonathan B. Alter, Esq.
Bingham McCutchen LLP
One State Street
Hartford, CT 06103
Counsel for Taubman Investments
Long/Short St etc.

Ms. Nina Fiskaaen
Controller, Nordea Liv Norge AS
Folke Bernadottes vei 38
5147 Fyllingsdalen
1201 Bergen
NORWAY

Susan V. Demers, Esq.
Price Findlay & Co.
Tropic Isle Building, BVI
P.O. Box 3331
Road Town, Tortola
British Virgin Islands

Steven E. Mackey, Esq.
Office of The United States Trustee
One Century Plaza
265 Church Street, S. 1103
New Haven, CT 06510

Donald Workman, Esq.
Foley & Lardner
3000 K Street, N.W.
Suite 500
Washington, D.C.

Harley S. Tropin, Esq.
Kozyak Tropin & Throckmorton, P.A.
2800 First Union Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131

David Blaylock, Esq.
Glankler Brown, PLLC
1700 One Commerce Square
Memphis, Tennessee 38103
Counsel for George R. Pidgeon, Sr.

Mr. Hans Jacob Dahle
Vesta Forsikring AS
P.O. Box 7070
5020 Bergen
NORWAY

Lancer Receivership
64036.2

**SERVICE LIST FOR E-MAIL REQUESTS**
*FOR ACCEPTANCE OF SERVICE FROM THE RECEIVER ONLY*
<u>PER CASE MANAGEMENT ORDER</u>

Jeffrey Greilsheimer, Esq.
Hughes Hubbard and Reed, LLP
One Battery Park Plaza
New York, New York  10004
(212) 837-6772
E-mail: greilshe@hugheshubbard.com

EXHIBIT 5

# Marty Steinberg, Receiver

*Lancer Management Group LLC*
*Lancer Management Group II, LLC*
*Relief Defendants:*
*Lancer Offshore, Inc.*
*Omnifund, Ltd.*
*LSPV, Inc.*
*LSPV, LLC*

March 8, 2004

HUNTON & WILLIAMS LLP
1111 BRICKELL AVENUE, SUITE 2500
MIAMI, FLORIDA 33131-1802

TEL    305 • 810 • 2500
FAX    305 • 810 • 2460

MARTY STEINBERG
DIRECT DIAL: 305 810-2505
EMAIL: msteinberg@hunton.com

FILE NO. 64036.000002

Citco Fund Services (USA) Inc.'s
Citco Corporate Services Inc.
701 Brickell Avenue, 12th Floor
Miami, FL 33131

Attn: Registered Agent

Dear Sir or Madam:

As you may know, I am the Court appointed Receiver of Lancer Management Group LLC ("Lancer"), Lancer Management Group II LLC ("Lancer II"), Lancer Offshore Inc. ("Offshore"), Omnifund Ltd. ("Omnifund"), LSPV Inc., ("Offshore LSPV"), LSPV LLC ("Partners LSPV"), G.H. Associates LLC ("GH"), and Alpha Omega Group Inc. ("AO") (collectively the "Receivership Entities") and responsible person for Lancer Partners, L.P. ("Partners" together with the Receivership Entities the "Lancer Entities").

We are writing to you because the records of the Lancer Entities suggest that you have received funds, securities or other material transfers from or on behalf of one or more of the Lancer Entities prior to my appointment as Receiver.

My professionals are currently investigating each and every transfer and are considering the propriety of litigation in connection with those transactions. We would prefer to complete a thorough investigation prior to the commencement of any litigation. Additionally, if we do ultimately determine that a claim or cause of action exists against you, we would like to have an opportunity to discuss them with you to attempt an amicable resolution without the need for litigation. Certain statutes of limitation or other contractual or equitable bars may, however, force us to file suit before such investigation and discussions can be concluded. Accordingly, to avoid the possibility of premature or unnecessary litigation, we are requesting all "potential targets" (however remote that potential may be) such as yourself to execute the enclosed Tolling Agreement pursuant to which you and I, agree to toll (or freeze) for a two year period all

March 8, 2004
Page 2

applicable statutes of limitations, contractual bars, equitable bars and/or other time bars purporting to limit the time within which I may commence any lawsuit against you or in which you may assert any counterclaim or defense to such lawsuit.

We have enclosed two copies of the Tolling Agreement executed by me as Receiver. Kindly execute and return to us one (1) original signed by you and retain the other original for your records. While we would prefer to file lawsuits only after all other avenues have been exhausted, if you do not execute the Tolling Agreement within ten (10) days, we may be forced to commence immediate litigation against you. Again, we hope this will not be necessary and look forward to receiving your executed Tolling Agreement.

Sincerely,

Marty Steinberg, Receiver

## TOLLING AGREEMENT

This Tolling Agreement ("Agreement") is made this __ day of _____, 2004 ("Effective Date"), by and between Marty Steinberg, as Court appointed Receiver of Lancer Management Group LLC ("Lancer"), Lancer Management Group II LLC ("Lancer II"), Lancer Offshore Inc. ("Offshore"), Omnifund Ltd. ("Omnifund"), LSPV Inc., ("Offshore LSPV"), LSPV LLC ("Partners LSPV"), G.H. Associates LLC ("GH"), and Alpha Omega Group Inc. ("AO") (collectively the "Receivership Entities") and responsible person for Lancer Partners, L.P. ("Partners") together with the Receivership Entities the "Lancer Entities") and _____ _____ _____ (the "Potential Defendant").

The Receiver and the Potential Defendant shall be collectively referred to as the "Parties."

### RECITALS

A.    The Receiver is currently investigating and analyzing possible federal and/or state claims and causes of action against the Potential Defendant relating to certain transactions, relationships and/or dealings with one or more of the Lancer Entities (the "Receiver's Potential Claims").

B.    Before the Receiver asserts the Receiver's Potential Claims before a United States Court and/or appropriate state court, the Receiver intends to complete his investigation and analysis.

C.    Once the Receiver concludes his investigation and analysis, the Parties wish to engage in settlement discussions regarding the Receiver's Potential Claims and any defenses or counterclaims which may be asserted by the Potential Defendant.

D.     The Parties desire to establish a period ("the Tolling Period") during which they can consider and explore the possibility of resolving the Receiver's Potential Claims and any defenses or counterclaims by the Potential Defendant, without litigation.

**AGREEMENT**

NOW, THEREFORE, in consideration of the mutual covenants and conditions set forth herein, the Parties agree as follows:

1.     The recitals above are incorporated herein by reference.

2.     This Agreement shall be effective immediately upon execution by all Parties (the "Effective Date"). The Tolling Period shall commence as of the Effective Date and shall terminate two (2) years from the Effective Date unless (a) terminated earlier as provided in paragraph 4, below or (b) extended by the Parties in writing. The period of time between the Effective Date and the termination date shall be referred to as the "Tolling Period".

3.     The Parties agree that all applicable statutes of limitations, contractual bars, equitable bars and/or other time bars purporting to limit the time within which the Receiver may commence any lawsuit against the Potential Defendant or the Potential Defendant may assert any counterclaim or defense are tolled during the Tolling Period as to the Receiver's Potential Claims and any defenses or counterclaims by the Potential Defendant.

4.     Either Party may terminate this Agreement at any time by giving ninety days' advance written notice to the other Parties. This Agreement shall expire on the ninety-first (91st) day after delivery of such notice by registered mail or any other delivery method that verifies the date of delivery.

5.     This Agreement does not constitute an admission of fact, law, and/or liability on the part of any of the Parties. This Agreement shall not be construed as an admission against

interest or as a waiver of any right presently available to the Parties.  This Agreement does not

constitute any admission regarding jurisdiction over the Parties, venue, the Parties' standing to

bring suit, or the validity or justifiability of any of the Receiver's Potential Claims or any of the

potential counterclaims or defenses by the Potential Defendant.

      6.     This Agreement may be executed in counterparts.

      7.     This Agreement and the obligations of the Parties hereto may not be altered,

amended, modified, extended, or renewed in any respect, except by a writing duly executed by

the Parties and the Parties agree that this Agreement constitutes the entire Agreement between

the Parties regarding the tolling of any and all statutes of limitation, contractual bars, equitable

bars or other time bars purporting to limit the time within which the Receiver may commence

any lawsuit against the Potential Defendant.

      8.     This Agreement and all terms, provisions and covenants contained herein are

binding on and shall inure to the benefit of the Parties hereto, their subsidiaries, affiliates, parent

companies, successors and assigns, including any chapter 7 or 11 trustees appointed for any or

all of the Lancer Entities.

      9.     Any notice under this Agreement shall be in writing and shall be delivered by

overnight courier, certified mail or any other method that verifies the date of delivery.

      10.    The Receiver shall serve the Potential Defendant with written notice under this

Agreement to the following address:

                  _____

                  _____

                  _____

                  _____

                  _____

11.    The Potential Defendant shall serve the Receiver with written notice under this

Agreement to the following address:

Marty L. Steinberg, Esq.
Craig V. Rasile, Esq.
HUNTON & WILLIAMS
Mellon Financial Center, Suite 2500
1111 Brickell Avenue
Miami, Florida 33131
Tel: (305) 810-2500
Fax: (305) 810-2460

13.    The signatories to this Agreement acknowledge that they have the requisite

authority to bind the respective Parties.


The Receiver                                      The Potential Defendant

By: _____          By: _____

Dated: _____          Dated: _____


64036.000002 MIAMI 200716v3

## TOLLING AGREEMENT

This Tolling Agreement ("Agreement") is made this __ day of _____, 2004 ("Effective Date"), by and between Marty Steinberg, as Court appointed Receiver of Lancer Management Group LLC ("Lancer"), Lancer Management Group II LLC ("Lancer II"), Lancer Offshore Inc. ("Offshore"), Omnifund Ltd. ("Omnifund"), LSPV Inc., ("Offshore LSPV"), LSPV LLC ("Partners LSPV"), G.H. Associates LLC ("GH"), and Alpha Omega Group Inc. ("AO") (collectively the "Receivership Entities") and responsible person for Lancer Partners, L.P. ("Partners" together with the Receivership Entities the "Lancer Entities") and _____   ____   _____ (the "Potential Defendant"). The Receiver and the Potential Defendant shall be collectively referred to as the "Parties."

## RECITALS

A.     The Receiver is currently investigating and analyzing possible federal and/or state claims and causes of action against the Potential Defendant relating to certain transactions, relationships and/or dealings with one or more of the Lancer Entities (the "Receiver's Potential Claims").

B.     Before the Receiver asserts the Receiver's Potential Claims before a United States Court and/or appropriate state court, the Receiver intends to complete his investigation and analysis.

C.     Once the Receiver concludes his investigation and analysis, the Parties wish to engage in settlement discussions regarding the Receiver's Potential Claims and any defenses or counterclaims which may be asserted by the Potential Defendant.

D.     The Parties desire to establish a period ("the Tolling Period") during which they can consider and explore the possibility of resolving the Receiver's Potential Claims and any defenses or counterclaims by the Potential Defendant, without litigation.

AGREEMENT

NOW, THEREFORE, in consideration of the mutual covenants and conditions set forth herein, the Parties agree as follows:

1.     The recitals above are incorporated herein by reference.

2.     This Agreement shall be effective immediately upon execution by all Parties (the "Effective Date"). The Tolling Period shall commence as of the Effective Date and shall terminate two (2) years from the Effective Date unless (a) terminated earlier as provided in paragraph 4, below or (b) extended by the Parties in writing. The period of time between the Effective Date and the termination date shall be referred to as the "Tolling Period".

3.     The Parties agree that all applicable statutes of limitations, contractual bars, equitable bars and/or other time bars purporting to limit the time within which the Receiver may commence any lawsuit against the Potential Defendant or the Potential Defendant may assert any counterclaim or defense are tolled during the Tolling Period as to the Receiver's Potential Claims and any defenses or counterclaims by the Potential Defendant.

4.     Either Party may terminate this Agreement at any time by giving ninety days' advance written notice to the other Parties. This Agreement shall expire on the ninety-first (91st) day after delivery of such notice by registered mail or any other delivery method that verifies the date of delivery.

5.     This Agreement does not constitute an admission of fact, law, and/or liability on the part of any of the Parties. This Agreement shall not be construed as an admission against

interest or as a waiver of any right presently available to the Parties. This Agreement does not constitute any admission regarding jurisdiction over the Parties, venue, the Parties' standing to bring suit, or the validity or justifiability of any of the Receiver's Potential Claims or any of the potential counterclaims or defenses by the Potential Defendant.

6.     This Agreement may be executed in counterparts.

7.     This Agreement and the obligations of the Parties hereto may not be altered, amended, modified, extended, or renewed in any respect, except by a writing duly executed by the Parties and the Parties agree that this Agreement constitutes the entire Agreement between the Parties regarding the tolling of any and all statutes of limitation, contractual bars, equitable bars or other time bars purporting to limit the time within which the Receiver may commence any lawsuit against the Potential Defendant.

8.     This Agreement and all terms, provisions and covenants contained herein are binding on and shall inure to the benefit of the Parties hereto, their subsidiaries, affiliates, parent companies, successors and assigns, including any chapter 7 or 11 trustees appointed for any or all of the Lancer Entities.

9.     Any notice under this Agreement shall be in writing and shall be delivered by overnight courier, certified mail or any other method that verifies the date of delivery.

10.    The Receiver shall serve the Potential Defendant with written notice under this Agreement to the following address:

_____   _   _____
_____   _____
_____
_____
_____   _____

11.    The Potential Defendant shall serve the Receiver with written notice under this

Agreement to the following address:

> Marty L. Steinberg, Esq.
> Craig V. Rasile, Esq.
> HUNTON & WILLIAMS
> Mellon Financial Center, Suite 2500
> 1111 Brickell Avenue
> Miami, Florida 33131
> Tel: (305) 810-2500
> Fax: (305) 810-2460

13.    The signatories to this Agreement acknowledge that they have the requisite

authority to bind the respective Parties.


The Receiver                                    The Potential Defendant

By:_____            By:_____

Dated:_____           Dated:_____

**EXHIBIT 6**



CITCO
*Citco Fund Services
(Curaçao) N.V.*

## ADMINISTRATIVE SERVICES AGREEMENT

AGREEMENT dated as of January 1, 1996 by and between LANCER OFFSHORE, INC., a British Virgin Islands International Business Company (the "Company"), and CITCO FUND SERVICES (CURACAO) N.V., a Netherlands Antilles corporation (the "Administrator").

WHEREAS, the Company wishes to engage the Administrator to perform certain financial, accounting, corporate, administrative and other services on behalf of the Company;

NOW THEREFORE, in consideration of the mutual promises contained herein, the parties hereby agree as follows:

## PART I. SERVICES OF THE ADMINISTRATOR

1.1    Financial, Accounting and Administrative Duties

In accordance with provisions of the Memorandum and Articles of Association of the Company, and under the supervision of the Company's Board of Directors and as provided therein, the Administrator, shall be responsible for performing all administrative duties and functions necessary or appropriate in connection with the activities of the Company, including the following:

    (a)    establishing and maintaining such bank, brokerage, custodian and other accounts as may be necessary or advisable; provided, that the Administrator agrees to establish such brokerage and custodian accounts as the Company's investment adviser shall request;

    (b)    collecting subscription payments in connection with the sale of the Company's shares, disbursing payments in connection with the redemption or repurchase of the Company's shares and disbursing payments of any dividends declared by the Company's Board of Directors;

    (c)    acting as registrar and transfer agent with respect to the Company's shares and, in that capacity, processing the issuance, transfer, conversion, redemption and cancellation of shares and share certificates and maintaining all appropriate shareholder registers and ledgers;

*Kaya Flamboyan 9
P.O. Box 812
Curaçao
Netherlands Antilles*

*Phone : (599-9) - 322000
Fax : (599-9) - 322001
Telex : 3445 CITCO NA
Cable : CURTRUST*

*Citco Group offices are established in Aruba,
Curaçao, St. Maarten, British Virgin Islands,
Bermuda, U.S. Virgin Islands, Bahamas,
Cayman Islands, Barbados, New York, Miami,
La Jolla, Toronto, Amsterdam, Rotterdam,
The Hague, Luxembourg, Geneva, Lausanne
and Gibraltar*



**CITCO**

d)      convening and conducting all meetings of shareholders, soliciting proxies in connection therewith and recording the minutes thereof;

(e)      computing the monthly Net Asset Value of the Company's shares as of the close of business on the last day of each month, and reporting such to the investment manager.

(f)      preparing and maintaining all customary financial and accounting books and records in appropriate form and in sufficient detail to support an annual independent audit of the financial condition of the Company, and the administration thereof;

(g)      distributing annual reports and such other reports as the Company's Board of Directors may request to shareholders;

(h)      responding to inquiries from time to time received by the Company from shareholders, prospective investors and others;

(i)      distributing, from time to time, financial information to shareholders, including calculations of the Company's Net Asset Value;

(j)      maintaining the principal corporate records;

(k)      convening meetings of the Board of Directors;

(l)      disbursing payments of directors' and officers' fees, salaries and expenses, legal and accounting fees and expenses, taxes, government license and filing fees and all other costs and expenses incurred for the account of the Company, including amounts for research and related costs to be paid to the investment adviser for the Company and investment advisory fees, to the extent such fees are not paid directly to the Company's investment adviser out of the Company's brokerage accounts, (other than transaction costs and related expenses arising in connection with the Company's investment program);

(m)    responding to inquiries and otherwise communicating with the general public.



CITCO

1.2    Compensation

As compensation for its services to the Company, including director services, the Administrator shall receive an annual fee, of  fifteen basis points on net assets up to US$100 million and ten basis points on the excess, charged monthly at the rate of one-twelfth of fifteen basis points on net assets at the end of each month, subject to a minimum fee of $2,000 per net asset value.

Such fees shall be payable in monthly installments in arrears in the manner provided in Section 2.3 hereof.  The Administrator shall be entitled to reimbursement of expenses as provided in Section 2.5 hereof.

## PART II. GENERAL PROVISIONS

2.1    Personnel

The Administrator shall at all times and at its own expense maintain and make available to the Company qualified personnel suitable for the performance of the duties of the Administrator.

2.2    Agents

With the prior written consent of the Company, which consent shall not be unreasonably withheld, the Administrator may employ and pay at the expense of the Company any agents, whether attorneys, solicitors, bankers, accountants, stockbrokers or other agents, to transact any business or do any act required to be transacted or done in the execution of the terms of this Agreement.  In no event, however, shall the duties enumerated in Part I above be performed by the Administrator or an agent within the United States.

2.3    Payment of Fees

(a)    Written invoices for the fees due pursuant to Section 1.2 shall be submitted to the Company or its designee by the Administrator promptly following the close of each calendar quarter;

(b)    All annual fees due pursuant to Section 1.2 during the initial financial year of the Company and during the financial year in which this Agreement expires or is terminated shall be prorated to reflect the number of days in such financial year during which this Agreement was in effect.

2.4    Fee Increases

The fees payable pursuant to Section 1.2 shall be subject to increase from time to time to the extent appropriate to reflect demonstrable increases in the operational costs incurred by the



Administrator for the provision of services hereunder, provided that any such increase shall be subject to the consent of the Board of Directors of the Company. The Administrator shall give the Company at least ninety (90) days notice of any increase in fees.

2.5     Expenses

All reasonable out-of-pocket expenses incurred by the Administrator on behalf of the Company shall be paid or reimbursed by the Company.

2.6     Scope of Liabilities

The Administrator shall not be liable to the Company or its shareholders for any loss, damage, expense or claim occasioned by any act or omission of the Administrator in connection with the performance of its services hereunder, other than as a result of its gross negligence, willful misconduct or reckless disregard of its duties hereunder.

2.7     Indemnification

The Company shall indemnify the Administrator (which shall include solely for purposes of this Section the Administrator's directors, officers, employees and shareholder) against, and hold it harmless from, any expense, loss, liability or damage arising out of any claim asserted or threatened to be asserted by any third party in connection with the Administrator's serving or having served as such pursuant to this Agreement; provided, however, that the Administrator shall not be entitled to such indemnification with respect to any expense, loss, liability or damage which was caused by the Administrator's own gross negligence, willful misconduct or reckless disregard of its duties hereunder.

2.8     Books and Records

All books, records and other documents received or prepared by the Administrator on behalf of the Company shall be the exclusive property of the Company. Except as otherwise authorized by the Board of Directors of the Company, all such books, records and other documents (other than those which are not of a material nature) shall be preserved by the Administrator for a period of at least seven years or until they are delivered to duly appointed successors to the Administrator upon termination of this Agreement.

2.9     Confidential Relationship

Except as contemplated by this Agreement or as otherwise required by law, the Administrator shall treat all information pertaining to the investments, ownership and business affairs of the Company as confidential and shall not disclose such information to any persons other than directors, officers, accountants, legal advisers, investment advisers or other authorized agents of the Company.

4



2.10    Non-Exclusivity
The nature of the duties of the Administrator hereunder shall not preclude the Administrator from providing services of a comparable nature to any other person.

2.11    Term and Termination
(a)    This Agreement shall have an initial term of twelve months commencing as of the date of this Agreement and shall be automatically renewed for successive terms of twelve months each, unless sooner terminated by either party written notice as provided below.

(b)    This Agreement may be terminated by the Administrator upon not less than 90 days written notice to the Company, and may be terminated on behalf of the Company by resolution of its Board of Directors upon like notice to the Administrator.

(c)    In the event of termination of this Agreement, the Administrator shall promptly tender its resignation of its corporate offices, if any, effective as of the date of termination.

2.12    Assignment
This Agreement may not be assigned by either of the parties without the prior written consent of the other party.

2.13    Waiver or Modification
The provisions of this Agreement shall not be waived or modified other than by means of a writing signed by the party to be charged with such waiver or modification.

2.14    Governing Law
This Agreement shall be governed by and construed in accordance with the laws of the British Virgin Islands.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first written above.

_____
LANCER OFFSHORE, INC.

_____
CITCO FUND SERVICES (CURACAO) N.V.

5