## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 03-80612-Civ-MARRA

SECURITIES AND EXCHANGE COMMISSION,　　)

　　　　Plaintiff,　　　　　　　　　　　　)

　　v.　　　　　　　　　　　　　　　　　)

MICHAEL LAUER,　　　　　　　　　　　　)

　　　　Defendant.　　　　　　　　　　　)

FILED by _____ D.C.

OCT 28 2013

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S. D. of FLA. – MIAMI

### MICHAEL LAUER'S THIRD MOTION TO VACATE THE JUDGMENT AND/OR DISMISS THE COMPLAINT ON THE GROUND, *INTER ALIA*, THAT THE SEC'S AND THE COURT-APPOINTED RECEIVER'S JOINT OPERATION AGAINST LAUER VIOLATED SEPARATION OF POWERS AND DUE PROCESS

Pursuant to Rules 12(h), 60(b)(4), 60(b)(6), and 60(d)(3), Fed.R.Civ.Proc., Michael Lauer

files this motion to vacate the judgment and dismiss the complaint. From the inception of the case,

it now appears, plaintiff SEC, part of the Executive Branch, and the Receiver, a judicial officer

appointed by the District Court, willfully formed a comprehensive joint operation against Lauer.

The operation violated the constitutional doctrine of Separation of Powers, the Due Process Clause

of the Fifth Amendment, and constituted a fraud on the court. Moreover, the Court has lacked

subject-matter jurisdiction over the Lancer hedge funds. The Court must dismiss this action.

### I.

The judgment is void on five legal grounds: First, SEC and Receiver violated Rule 60(b)(4)

by depriving Lauer of Due Process. *Burke v. Smith*, 252 F.3d 1260, 1263, 1265-66 (11th Cir. 2001)

("Generally, a judgment is void under Rule 60(b)(4) 'if the court that rendered it lacked

jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due

process of law.'"); *accord, Oldfield v. Pueblo de Bahia Lora, S.A.*, 558 F.3d 1210, 1215 n.13 (11th

Cir. 2009) (quoting *Burke v. Smith*); *Bass v. Hoagland*, 172 F.2d 205, 209 (5th Cir. 1949).

Second, alternatively, they violated Rule 60(b)(6). "In simple English, the language of the 'other reason' clause, for all reasons except the five particularly specified, vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate." *Klapprott v. United States*, 335 U.S. 601, 614-15 (1949); *United States v. Certain Real Property Located at Route 1*, 126 F.3d 1314, 1318 (11th Cir. 1997) (Rule 60(b)(6) is "a grand reservoir of an equitable power to do justice in a particular case"); *Seven Elves, Inc v. Eskenazi*, 635 F.2d 396, 402 (5th Cir. 1981) (same); *see Bros Inc. v. W.E. Grace Mfg. Co.*, 320 F.2d 594, 609-10 (5th Cir. 1963).

Third, their actions constituted a fraud on the court under Rule 60(d)(3). *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 245-46 (1944) ("This is not simply a case of a judgment obtained with the aid of a witness who, on the basis of after-discovered evidence, is believed possibly to have been guilty of perjury. Here, . . . we find a deliberately planned and carefully executed scheme to defraud not only the Patent Office but the Circuit Court of Appeals."); *Aldana v. Del Monte Fresh Produce, N.A.*, 578 F.3d 1283, 1288-89 (11th Cir. 2009); *Murphy v. FDIC*, 208 F.3d 959, 966 (11th Cir. 2000); *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1339 (5th Cir. 1978); *In re West Texas Marketing Corp.*, 12 F.3d 497, 503 n.3 (5th Cir.1994); *see SEC v. Wheeling-Pittsburgh Steel Corp.*, 648 F.2d 118, 127 (3d Cir. 1981) (the "ultimate question [is] whether the SEC is . . . abusing the court's process").

This case is squarely within *Hazel-Atlas* because the frauds here implicated officers of the court, including government attorneys and attorney-agents of the District Court. A significant fraud coupled with attorney involvement constitutes a fraud on the court. Judge Friendly stated in *Kupferman v. Consolidated Research & Mfg. Corp.*, 459 F.2d 1072, 1078 (2d Cir. 1972):

> While an attorney "should represent his client with singular loyalty that loyalty obviously does not demand that he act dishonestly and fraudulently; on the contrary his loyalty to the court, as an officer thereof, demands integrity and honest dealing with the court. And when he departs from that standard in the conduct of a case he perpetrates a fraud upon the court."

*Kerwit Med. Products, Inc. v. N.&H. Instr., Inc.*, 616 F.2d 833, 836-37 (5th Cir. 1980), binding on this Court, embraced *Kupferman*. Likewise, *Rozier, supra*, p.1338, states that fraud "by a party in which an attorney is implicated, will constitute a fraud on the court"; *accord, Kenner v. Commissioner*, 387 F.2d 689, 691 (7th Cir. 1968) (a fraud on the court is "a fraud perpetrated by officers of the court" impairing "its impartial task of adjudicating cases that are presented for adjudication"); *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118-19 (1st Cir. 1989) (citing *Rozier*); *Cleveland Demolition Co. v. Azcon Scrap Corp.*, 827 F.2d 984, 986 (4th Cir. 1987); Charles Alan Wright *et al.*, *Federal Practice & Procedure* § 2870, pp.583-85 (2d ed. 1995); 12 Moore, *Federal Practice* ¶ 60.21[4][a], p.60-51 (3d ed. 2007). The SEC, moreover, operates within the federal government, and are held to a higher standard, *United States v. Corona*, 551 F.2d 1386, 1391 (5th Cir. 1977), while the Receiver is a fiduciary.

Fourth, pervasive government misconduct by plaintiff SEC requires dismissal of the complaint as well as vacating the judgment. *Gardner v. United States*, 211 F.3d 1305, 1309 (D.C. Cir. 2000); *Combs v. Rockwell Int'l Corp.*, 927 F.2d 486, 488 (9th Cir. 1991); *United States v. Bahl*, 25 F.3d 904 (10th Cir. 1994); *United States v. Miller*, 411 F.2d 825, 832 (2d Cir. 1969); *United States v. Consolidated Laundries Corp.*, 291 F.2d 563, 570-71 (2d Cir.1961).

Fifth, the Court lacks subject-matter jurisdiction over the hedge funds, discussed below.

## II.A.

The law requires a receiver, appointed by the court and operating under the auspices of the court, to be neutral or impartial in litigation, like the judge who appointed him. *Booth v. Clark*, 58 U.S. 322, 331 (1854) ("a receiver is an indifferent person between the parties"); *Sterling v. Stewart*, 158 F.3d 1199, 1201 n.2 (11th Cir. 1998) ("A receiver is a neutral court officer appointed by the court . . . .'"); *Liberte Capital Group, LLC v. Capwill*, 462 F.3d 543, 551 n.2 (6th Cir. 2006) ("A receiver is an indifferent person between the parties, appointed by the court . . . ."); *Ledbetter*

3

*v. Farmers Bank & Trust Co.*, 142 F.2d 147, 150 (4th Cir. 1944) ("a receiver is the agent only of the court appointing him; he represents the court rather than the parties."). A receiver cannot be partisan or biased. The SEC, on the other hand, is part of the Executive Branch, with the mission to take action against persons it asserts violated the laws passed by the Legislative Branch.

The roles of the three branches of the federal government differ and they must be kept separate. Separation of Powers was a principal issue at the Constitutional Convention. *The Federalist Papers, passim.* The teaching of *Federalist* No. 78 is that a neutral and independent judiciary to protect the citizenry is a cornerstone of constitutional Separation of Powers:

> [T]hough individual oppression may now and then proceed from the courts of justice, the general liberty of the people can never be endangered from that quarter; I mean so long as the judiciary remains truly distinct from both the legislature and the executive. For I agree that "there is no liberty if the power of judging be not separated from the legislative and executive powers."[1]

Justice Scalia quoted this language in his opinion for the Court in *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 222-23 (1995). Any significant commingling of the branches of the federal government is unconstitutional. *Mistretta v. United States*, 488 U.S. 361 (1989); *Bowsher v. Synar*, 478 U.S. 714, 725 (1986) (Burger, C.J.). In *Young v. United States*, 481 U.S. 787 (1987), the Supreme Court reversed a conviction when a district court, after defendants allegedly violated an injunction it issued following their infringement of plaintiff's trademark, appointed plaintiff's attorneys as special prosecutors to prosecute the defendants for contempt. Concurring in the reversal, Justice Scalia wrote (481 U.S. at 816):

> Prosecution of individuals who disregard court orders (except orders necessary to protect the courts' ability to function) is not an exercise of "[t]he judicial power of the United States," U.S. Const., Art. III, §§ 1, 2. . . . The judicial power is the power to decide, in accordance with law, who should prevail in a case or controversy. . . . It is

---

[1] The Anti-Federalists favored Separation of Powers at least as much as the Federalists. Herbert J. Storing, *What the Anti-Federalists Were For* 54-55, 59-63 (U. Chi. Press 1981); *The Anti-Federalist Papers* 169, 171-72, 240, 251, 335 (Ralph Ketcham, ed.) (Mentor 1986). The Anti-Federalist position has played an important role in a number of cases. *E.g.*, District of Columbia v. Heller, 554 U.S. 570 (2008); McIntyre v. Ohio Elections Comm'n, 514 U.S. 334 (1994).

accordingly well established that the judicial power does not generally include the power to prosecute crimes."

Courts of appeals have condemned such improper arrangements in a variety of contexts. In *FEC v. NRA Political Victory Fund*, 6 F.3d 821 (2d Cir. 1993), *cert. dism'd*, 513 U.S. 88 (1994), an enforcement action, the Court struck down a statutory arrangement whereby Congress put two *ex officio* nonvoting members on the Federal Election Commission. The Second Circuit held both that the defendant had standing and the action should be dismissed as violating Separation of Powers, even though the *ex officio* members from the Legislative Branch had no official powers:

> Even if the *ex officio* members were to remain completely silent during all deliberations (a rather unlikely scenario), their mere presence as agents of Congress conveys a tacit message to the other commissioners. The message may well be an entirely appropriate one – but it nevertheless has the potential to influence the other commissioners. . . . [T]he mere presence of agents of Congress on an entity with executive powers offends the Constitution. . . . The Commission argues that Congress intended *ex officio* membership to fulfill this coordinating function by having the Secretary and the Clerk play a mere "informational or advisory role" in agency decisionmaking. Advice, however, surely implies influence, and Congress must limit the exercise of its influence, whether in the form of advice or not, to its legislative role. *Id.*, pp. 826-28.

Providing advice violated separation of powers. *Accord, National Roofing Contractors Ass'n v. U.S. Dept. of Labor*, 639 F.3d 339, 343 (7th Cir. 2011) ("The judiciary is not authorized to tell agencies how they must use prosecutorial discretion when implementing valid rules. . . . Functional as well as formal (separation-of-powers) concerns support leaving prosecutorial decisions to prosecutors."); *In re Austrian & German Holocaust Litig.*, 250 F.3d 156, 163-64 (2d Cir. 2001) ("The doctrine of separation of powers prohibits the federal courts from excursions into areas committed to the Executive Branch or the Legislative Branch."); *United States v. Jennings*, 960 F.2d 1488, 1491 (9th Cir. 1992) (The judiciary does not "have a license to intrude into the authority, powers and function of the [executive] branch . . . ."); *In re Grand Jury Subpoena Duces Tecum*, 782 F. Supp. 1518, 1521 (N.D. Ala. 1992) ("Our constitution charges to the executive branch of government the responsibility for investigation and prosecution of crime. Judicial

deference to the prosecutorial function and its attendant discretion in who, when, where, and how to prosecute is founded upon the constitutional separation of powers. *Smith v. Meese*, 821 F.2d 1484, 1491 (11th Cir. 1987)."). Prosecution is not an Article III function.

## B.

Receiver Marty Steinberg, appointed on the recommendation of the SEC, DE10, pp.3, 24-25; DE20, p.30, revealed earlier this year that starting no later than July 10, 2003, his actions as a supposedly neutral officer of the Article III court and the SEC's prosecutorial activities as a member of the Executive Branch coincided in all respects, boasting of the existence of a comprehensive cooperative effort as though it was the most natural thing in the world. According to him and the SEC, their interests are identical, so the attorney-client and work-product privileges covered *without exception* every single communication between them starting before he was even appointed. Receiver's Response to Defendant Michael Lauer's Motion for an Order Allowing the Parties to Take Discovery 6-7, DE2699, March 21, 2013, *Exh. B*, reads:

> [T]he sharing of information and/or communications between the SEC and the Receiver is protected under the common interest doctrine, which provides that parties with common business or legal interests can share information on those topics without waiving the protection afforded by the work-product doctrine. The Receiver and the SEC obviously share a common interest in discovering facts *underlying the fraud perpetuated against the Lancer Funds and its investors*, and in preserving and collecting the most assets for the benefit of the innocent investors. Thus, these types of communications are protected by the work-product doctrine.[2]

Steinberg elaborated on his role and involvement in *Court-Appointed Receiver of Lancer Mgmt. Group v. Lauer*, No. 05-civ-60584-MARRA, DE762, May 1, 2013, pp. 22, *Exh. C*:

> Normally a Receiver is appointed after the SEC has completed a substantial investigation and obtained a judgment. Often times this occurs after the Justice Department indicts or convicts the guilty parties. In this unusual case, however, the Receiver was tasked with

---

[2] (Emphasis added.) Once again, the actions of the Receiver are even worse than they seem at first blush. Lauer was the single largest investor in the Funds. Thus, the Receiver was spending substantial amounts of Lauer's money to help the SEC defeat Lauer while at the same time they were spending Lauer's money to successfully convince the district court to deny Lauer the use of his assets to defend himself. It is positively Orwellian.

performing many of these measures. As a result of the Receiver's efforts, he and his professionals were able to recover and review hundreds of thousands of documents and build a central, searchable database of documents and information that facilitated actions by the SEC, the U.S. Attorney's Office, the Group investors and the Class investors. No other party was performing these crucial tasks.

This corroborates that the SEC and DOJ shared confidences with Steinberg. From the SEC and DOJ Steinberg learned what they needed to prevail against Lauer – and gave it to them. More significant, the government "tasked" Steinberg with specific assignments. "To task" means "To assign a task or impose a task on." *The American Heritage Dictionary* 1388 (3d ed. 1993).

Lauer filed his principal brief in the Eleventh Circuit on August 8, 2013, on his appeal from the District Court's orders, DE2723, DE2724. The next day, Steinberg filed Receiver's Motion for Leave to Intervene in Michael Lauer's Appeal to press his privilege argument. On September 24, 2013, Lauer filed Defendant-Appellant Michael Lauer's Emergency Motion to Strike or Deny Receiver's Motion to Intervene. On September 27, 2013, the SEC filed Securities and Exchange Commission's Opposition to Motion to Strike, which explicitly embraced the Receiver's argument that all "documents [Lauer] sought were shielded by various privileges. DE2699 at 1." *Exh. D* (Certificate of Interested Persons omitted). Thus, the SEC in a court filing confirmed its alliance with the Receiver, which is the basis of this motion.[3] The Receiver also filed an opposition to Lauer's motion, which adopted the substance of his DE2699 by reference. *Exh. E* (Certificate of Interested Persons omitted). These motions are pending in the Eleventh Circuit.

Even before Lauer had even learned of the charges against him, Steinberg regarded Lauer as guilty. DE 2699. The Court was paying him with money held by the Judicial Branch to pursue Lauer. Put simply, he unconstitutionally acted as a prosecutor from the day he was named. Combining the judiciary with the executive "is akin to dispensing with a jury trial because a

---

[3] Apparently in all seriousness the SEC argued to the Eleventh Circuit: "Finally, Lauer states no basis for striking the Receiver's motion. . . . Fed. R. Civ. P. 12(f) (pleadings may be stricken [only] because of 'redundant, immaterial, impertinent, or scandalous matter[s]')." *Exh. D*, p.3; *but see* DE778, DE791, DE1812, DE1814, DE1836, DE1913, DE 2212.

defendant is obviously guilty." *Melendez-Dias v. Massachusetts*, 129 S.Ct. 2527, 2536 (2009) (Scalia, J.). Moreover, the arrangement created impermissible Judicial Branch bias. *See* 28 U.S.C. §§ 144, 455; *Liteky v. United States*, 510 U.S. 540, 555, 564 (1994); *Thomas v. Tenneco Packaging Co.*, 293 F.3d 1306, 1329 (11th Cir. 2002). The bias was pervasive and without basis in the record; in fact, there was no record yet. Of course, if the Court, ignorant of the Receiver's partisanship and mission, had *ex parte* contact with him, further inquiry would be required. "The government bears the burden of showing that the defendant was not prejudiced by ex parte communications, and the burden is 'a heavy one.'" *United States v. Simms*, 385 F.3d 1347, 1352-53 (11th Cir. 2004).

Steinberg's verification that the SECs had not performed "a substantial investigation" establishes that the total freeze of Lauer's assets was based on an unsubstantial investigation and contradicts what the SEC unqualifiedly told Judge Zloch at the TRO hearing that led him to impose an unusual total freeze of Lauer's assets and the appointment of a receiver. DE762, pp.22-23, No. 05-civ-60584-MARRA. *Exh. C.* The SEC falsely stated Lauer owned an offshore bank account and that mutual funds catering to unsophisticated investors owned shares of the Funds, *id*, pp.8, 19-20, 25, falsehoods that Lauer consistently denied and that neither the SEC nor the Receiver ever repeated – or corrected on the record.[4] This falsehood was the primary motivation for proceeding *ex parte* and obtaining an *ex parte* TRO. SEC lawyers Zinn and Martin also boldly asserted: "it's clear that there have been violations of the securities laws" on the basis of a seriously flawed and incomplete investigation. DE 20, pp.2; *see Exh. A* (Lauer Decl.) 7-8.[5]

---

[4] Years later the Receiver admitted that he spent millions of dollars searching for money overseas that belonged to Lauer. He was unsuccessful. Carens Dep., *Exh. F*, 12/13/11, pp.102-03, No. 05-civ-60854. The direct examination of Carens, Lauer's former wife, was conducted by counsel for the Receiver and ends at p.81. Cross-examination by Martin Garvey, a *pro se* defendant in that case whom the jury also acquitted in U.S. v. Lauer, begins at p.82.

[5] For a summary of Lauer's background in securities and managing hedge funds, *see* Lauer Decl. 1-4. How Lauer became entangled in this case is summarized at Lauer Decl. 4-7.

Steinberg participated in decisions that Separation of Powers mandates be the Executive Branch's alone while the SEC simultaneously invaded the prerogatives of the Judicial Branch, operating together to oppose, *inter alia*, efforts by Lauer to obtain money to defend himself. By virtue of the joint efforts of the SEC and Receiver, Lauer lacked the resources to hire a lawyer or even conduct discovery. For example, Lauer wanted to take the deposition of Joseph Huard, whose false declaration the Court used in granting the SEC summary judgment. DE2133, nn. 42, 133, 145; Lauer Decl. 14-15. When Huard's deposition was taken in December 2011, he was unable to provide incriminating evidence against Lauer. *E.g.*, *Exh. G*, pp.73-75, 91-92.

By willfully violating the constitutional imperative that the three branches of the government exercise different powers, duties, and responsibilities (not share a "common interest"), the SEC has acted unconstitutionally not only respecting Offshore, Omnifund, and Partners, but respecting Lauer and Lancer Management. No doubt now exists that their alliance included the SEC's covertly working with the Receiver on July 10-11, 2003 (if not before) to shutter Lancer Management, the manager of the Funds, without having made provision for substitute professional management, leaving the Funds rudderless, powerless, and vulnerable. Lauer Decl. 10-11. The SEC and Receiver trampled on the adversary system, Separation of Powers, and Due Process.

The order appointing Steinberg, DE18, gave him the power to settle cases on behalf of Lancer and the Funds as part of his role as fiduciary to maximize the recovered assets. While that arrangement is customary with a receiver, it presupposes an independent and impartial receiver, not one conspiring with one of the parties. Plaintiff SEC, which seeks to punish wrongdoers, has had every reason to magnify the seriousness of Lauer's alleged actions. What better way to further that goal than for Steinberg to sell assets or settle cases for nominal amounts? What could better convince the judge that Lauer had indeed engaged in improprieties? Any showing of evenhandedness on the part of Steinberg would undermine his partner, the SEC. Evidently to

enhance the SEC's position that Lauer was evil incarnate, Steinberg also consistently refused to consult with Lauer, who repeatedly complained that Steinberg was receiving inadequate amounts when he sold Fund assets and was otherwise acting improperly. *Exh. A* (Lauer Decl.) 10-11.

Steinberg's huge expenditures to "recapture" from Lauer some low-value assets were not cost effective, *e.g.*, his two-year effort to recapture and sell a used GMC SUV, *see* DE434, DE508, DE1517,which was a mirror image of the SEC's campaign to take over Lauer's mother's small bank account. DE158, DE350, DE385; Lauer Decl. 11-12. Moreover, Steinberg instituted unnecessarily expensive and duplicative lawsuits: Nos. 05-60584-civ-MARRA; 04-60899-civ-MARRA; 05-60145-civ-MARRA. He took duplicative discovery with no value other than to harass Lauer, while inflating the Receiver's fees. DE426; Lauer Decl. 11. All this coincided with the SEC's interests, but not the Funds'.

The biased Receiver used assets he collected as court-appointed receiver and held for innocent investors to pay for a variety of SEC litigation expenses, apparently including close to a million dollars in fees and expenses of Soneet Kapila, the *only* witness the SEC called at the disgorgement hearing. In view of recent disclosures, Kapila's testimony attains new significance. SEC lawyer Martin asked him on direct examination, "And could you generally describe some of the work you've been doing in this proceeding?" Kapila answered: "Yes, sure. Following the appointment of the Receiver, Marty Steinberg, we were retained and I was retained for the purpose of some forensic work and mainly also to focus on issues for testimony purposes and as a testifying expert." DE2205, p.9. It is now evident that Kapila referred to Steinberg not to fix the time he was retained, but, rather, because there was a causal relationship between Steinberg's appointment and Kapila's work for the SEC. ("I was retained . . . as a testifying expert.") The only pending case was *SEC v. Lauer* and Kapila was paid with investor funds, not by the United States Treasury. Lauer Decl. 15-16. The SEC's having Judicial Branch member Kapila

responsible for presenting *all of* its evidence at the disgorgement hearing was legally indistinguishable from a judge's law clerk presenting the prosecutor's case to the judge who hired him.

Steinberg also prepared an elaborate electronic index of the database for his, the SEC's, and the DOJ's use. *Exh. D*, p.22. The supposedly impartial Receiver would not give *pro se* Lauer a free copy, as he presumably did the government, but insisted that Lauer pay tens of thousands of dollars – which he knew Lauer did not have (he had all Lauer's money). DE1724, DE1748, DE1771, DE1865. Lauer never obtained a copy of that essential index. Lack of the key to access the voluminous evidence led to his being held in contempt for, *inter alia*, violation of discovery orders. DE1218; Lauer Decl. 12-13. No objective observer would consider that neutral behavior.

One of the most cynical and destructive instances of the joint operation by the SEC and the Receiver was the SEC's motion for "an order granting leave to the Receiver to file consents to judgments on behalf of Lancer Management, LLC, Lancer Management Group II, LLC (collectively referred to as 'Lancer Management'), Lancer Offshore, Inc., Lancer Partners, LP, Omnifund, Ltd., LSPV, Inc. and LSPV, LLC . . . ." DE111. That was just what the SEC wanted, so it and the biased Receiver cooperated to convince the District Court to enter by consent *permanent* injunctions against innocent hedge funds with innocent directors, along with defendant Lancer Management, on the SEC's and Receiver's say so. DE249. What an extraordinary intergovernmental branch injustice! Can the Judicial Branch and one litigant conspire to impose a judgment on an innocent litigant, in fact, someone not even a real party to the litigation?

Receiver Steinberg pressed Lauer to settle the case, offering to help him if he provided evidence incriminating others, which he told Steinberg he did not have. Lauer did not know that Steinberg was, in effect, representing the government in seeking a settlement from Lauer, rather than acting as an officer of the court. Lauer Decl. 13-14.

The assistance Steinberg provided the SEC hampered Lauer's defense and likely influenced the district court's rulings in this case. *FEC v. NRA Political Victory Fund, supra.* The recent revelation, for example, puts in a very different light Steinberg's strenuous opposition to *pro se* Lauer's motion to stay the disgorgement hearing during the pendency of the criminal case. DE2114, DE2119. Since Steinberg had all his assets, his goal was the partisan one of helping the SEC by disrupting Lauer's preparation for the hearing and aiding DOJ's prosecution by forcing Lauer to testify at the disgorgement hearing. Lauer Decl. 16. Steinberg's assisting the DOJ increased his stake in an SEC victory and provided the important imprimatur of the government's judicial branch on the DOJ's attorneys' decision to prosecute Lauer. Since Lauer was acquitted of all charges, the unlawful activities may have been instrumental in convincing the grand jury to indict him. After all, *U.S. v. Lauer* was presented to *four* grand juries. See Lauer Decl. 16-17.

Steinberg acknowledged another indefensible action in his May 1, 2013, Response in Case No. 05-civ-60584 (DE762). The DOJ and SEC relied on Steinberg in the criminal case in *U.S. v. Lauer et al.,* 08-cr.-20071, S.D. Fla. As noted above, the grateful DOJ (and/or the SEC) "tasked" him to do work for the prosecution of Lauer. Steinberg tries manfully to excuse the SEC's, DOJ's, and his conduct: "No other party was performing these crucial tasks." *Id.* at 22. However, that excuse does not override the Constitution. Appointed to participate impartially in a civil proceeding, Steinberg surreptitiously injected himself into a criminal case as an active partisan for the prosecution, violating the Constitution just as he did in *SEC v. Lauer.*

The relationship between DOJ and Steinberg was a reciprocal two-way street. Thus, when the FBI arrested Lauer on the indictment, it illegally seized his iPhone. Lauer successfully moved to suppress the iPhone. DOJ's lawyer, Harold Schimkat, who had previously worked for the SEC in *SEC v. Lauer* before transferring to DOJ to work on the criminal case, told Judge Jordan that he had already given the information on the iPhone to the Receiver! *U.S. v. Lauer,* DE 351, DE 497,

pp.7-8 & nn.8, 11. This is another example of the cozy and substantial relationship between Steinberg and DOJ, in this instance one that appears to have violated the law. By what authority did the DOJ give data seized from a criminal defendant to one of the litigants in a civil case? What else did Steinberg receive from DOJ in exchange for the services he performed for them? What role did the SEC play in the delivery of data from DOJ to Steinberg?

Judge Jordan granted the motion to suppress and ordered DOJ to return the iPhone. Steinberg assured the court that he and the many others to whom he had given the illegally seized information would not use it. *Id.* Nevertheless, Steinberg proceeded to use the suppressed information on Lauer's iPhone at the *later* questioning of Heidi Carens, Lauer's former spouse (and perhaps others), exhibiting a total disregard for constitutional niceties:

> Q. So you understand that the receiver violated the District Court's order when they questioned you about the parties listed on Mr. Lauer's iPhone regarding some of the information, correct? A. Correct.[6]

## C.

The SEC made the Funds relief (or nominal) defendants in this case, and arranged to have the Receiver given exclusive control over their operation. It is undisputed that the Funds and their directors were innocent; they were the alleged victims of Lauer's allegedly unlawful conduct. In fact, the Receiver completely exonerated the directors in a document he filed on May 1, 2013, in No. 05-civ-60584-MARRA, S.D.Fla., DE762, pp.28-29:

> John Bendall and Richard Geist were directors at the Offshore Funds. The Receiver has not filed suit against either of these former directors of the Funds because the Receiver has no evidence that they participated in or had knowledge of the various fraudulent actions committed by Lauer and Garvey as outlined in the Second Amended Complaint. . . . [T]hey were innocent directors at the Funds without complicity in Lauer's and Garvey's fraudulent actions . . . .

*SEC v. Cherif*, 933 F.2d 403, 414 (7th Cir. 1991) (footnote omitted), states:

---

[6] Carens Dep., *Exh. F*, 12/13/11, pp.136-40; *see* 119-24.

> A "nominal defendant" is a person who can be joined to aid the recovery of relief
> without an assertion of subject matter jurisdiction only because he has no ownership
> interest in the property which is the subject of litigation. . . . A nominal defendant . . .
> has no interest in the subject matter litigated. His relationship to the suit is merely
> incidental and "it is of no moment [to him] whether one or the other side in [the]
> controversy succeed[s]." Bacon v. Rives, 106 U.S. 99, 104.

*SEC v. Founding Partners Capital Mgmt.*, 639 F.S.2d 1291, 1293 (M.D. Fla. 2009), makes

clear that relief or nominal defendants are essentially innocent stakeholders:

> A relief defendant is not accused of wrongdoing, but a federal court may order
> equitable relief against such a person where that person (1) has received ill-gotten
> funds, and (2) does not have a legitimate claim to those funds. . . . "[N]o cause of
> action is asserted against a nominal defendant."

*See CFTC v. Kimberlynn Creek Ranch, Inc.*, 276 F.3d 187, 191 (4th Cir. 2002) (no subject-matter

jurisdiction over relief defendant); *SEC v. Colello*, 139 F.3d 674, 675-76 (9th Cir. 1998) ("the

nominal defendant . . . is not a real party in interest"); *SEC v. Cavanagh*, 445 F.3d 105, 109 n.7 (2d

Cir. 2006); *SEC v. George*, 426 F.3d 786, 798 (6th Cir. 2005).

The Commission authorized the Funds to be sued, *Exh. H*, and in fact they were sued, *Exh.

I*, only as "Relief Defendants." Lauer asks the Court to take judicial notice of the unredacted *Ex. H*

under Rule 201(c)(2), Fed.R.Ev. *Mack v. South Bay Beer Distributors*, 798 F.2d 1279, 1282 (9th

Cir. 1986). Because they owned the relevant assets, the Funds were not even proper relief

defendants. By definition and in actuality, the Funds did no wrong. They were alleged *victims*.

The SEC and Receiver had no right to (mis)appropriate and illegally convert the Funds and their

assets by displacing their directors and usurping their functions, and then using their money to

prosecute Lauer. Since the Funds were beyond their power, the Court, the SEC, and the Receiver

violated the Due Process rights of the Funds and their directors.

The Court has lacked Article III and subject-matter jurisdiction over the Funds because

there is no case or controversy between the SEC and the innocent Funds. Rule 12(h),

Fed.R.Civ.Proc.; *Kimberlynn Creek Ranch, Inc.*, *supra*; *Cherif*, *supra*. Any decision respecting the

Funds is no more than an advisory opinion and void. *Genesis Healthcare Corp. v. Symczyk*, 133 S.Ct. 1523 (2013) (dismissal for lack of case or controversy); *United Public Workers v. Mitchell*, 330 U.S. 75, 89 (1947) ("the federal courts established under Article III of the Constitution do not render advisory opinions"). If the CEO of a big bank committed an alleged major fraud on the bank, could a district judge on the basis of an *ex parte* hearing dismiss the bank's directors and appoint a receiver with absolute power to operate the bank? Wouldn't that be a classic violation of the Fifth Amendment's Due Process Clause, among other things? The Court has had no more power over the operation of the British Virgin Island Funds than it would have over a person in China or India who was not named as a defendant in a case.

The Funds should have been dismissed either *sua sponte* or by motion of the SEC or Receiver some time during the nearly six years of litigation in the district court. *See* Rule 12(h), Fed.R.Civ.Proc. (dismissal mandatory "at any time" when no subject-matter jurisdiction); *Hollingsworth v. Perry*, 133 S.Ct. 2652 (2013) (dismissal for lack of subject-matter jurisdiction); *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006) (same). Because no cause of action has been or could be asserted against the Funds, the Court's very appointment of Steinberg as Receiver of the Funds at the instance of the SEC violated Due Process and is void *nunc pro tunc*.

## D.

While there is no requirement that an individual show injury by the violation of separation of powers or absence of subject-matter jurisdiction, *see, e.g., Young v. United States, supra; FEC v. NRA Political Victory Fund, supra*, the distortion of the Constitution prejudiced Lauer. The SEC benefited from Steinberg contribution. The over \$60 million in fees and expenses Steinberg received *from the Funds* (with the SEC's endorsement) added enormous resources to the SEC's effort. Proceeding *pro se* without any other assistance, Lauer suffered the further disadvantages of battling the SEC and Receiver working together. Lauer Decl. 11, 17. Does anyone believe that a

prosecutor can obtain contributions, much less Judicial Branch contributions, to prosecute a particular case? Isn't funding prosecutions a function of Congress under Article I? Can a member of the Judicial Branch take assets in violation of Due Process and use them to fund the Executive Branch? Isn't subject-matter jurisdiction mandatory? The constitutional violations are endless.

"'The structural principles secured by the separation of powers protect the individual . . . .'" *Stern v. Marshall*, 131 S.Ct. 2594, 2605 (2011) (Roberts, C.J.), quoting *Bond v. United States*, 131 S.Ct. 2355, 2365 (2011), which also said, "individuals 'are protected by the operation of separation of powers and checks and balances and they are not disabled from relying on those principles in otherwise justiciable cases and controversies.'" *Young, Stern, Bond*, and *FEC v. NRA Political Victory Fund* establish the standing of Lauer to vacate the judgment and dismiss the complaint. Indeed, it is difficult to imagine anybody whose claim to standing would be stronger than the defendant in an unconstitutionally instituted and conducted federal enforcement proceeding and any relief more appropriate than dismissal of the case. It is likewise difficult to imagine a remedy other than dismissal. *Young, supra; FEC v. NRA Political Victory Fund, supra.*

By having willfully co-opted the Receiver for a decade of litigation, the SEC's entire effort in *SEC v. Lauer* has been corrupted. How can the SEC claim it legally obtained a judgment against Lauer when a judicial official appointed in this very case comprehensively immersed himself in its partisan effort? The SEC's use of Steinberg's resources and status distorted the entire proceeding against Lauer, making unsustainable both the finding of liability, DE2133, and the finding of over $40 million as the amount to be disgorged. DE2260. Also, the alliance between the SEC and Steinberg could not help but influence the District Court that appointed Steinberg expecting him to be impartial. *E.g.*, DE111, DE207, DE371, DE426, DE500, DE808.

Acknowledging that the SEC and Receiver were acting as partners from the inception of the case establishes that plaintiff SEC was directly involved in the Receiver's closing down Lancer

and the Funds. Indeed, the Receiver specifically claimed that his communications with the SEC leading up to the shuttering of Lancer on July 11, 2003, were part of a joint operation with the SEC and privileged. *Compare* DE 2679, p.2, *with* DE2699, pp.6-7; see Lauer Decl. 9-10. Their joint action in shuttering Lancer based on an *ex parte* hearing violated Lauer's and Lancer's Due Process rights, voiding the judgment. *United States v. James Daniel Good Real Property*, 510 U.S. 43, 48, 55-56 (1993) ("Our precedents establish the general rule that individuals must receive notice and an opportunity to be heard before the Government deprives them of property."); *accord, Fuentes v. Shevin*, 407 U.S. 67, 81 (1972); *Goldberg v. Kelly*, 397 U.S. 254 (1970).

Rule 60(d)(3) was violated not only because SEC and Receiver attorneys were involved, but also because the SEC falsely represented to the Court on July 10, 2003 that the *status quo* would be maintained. The motion and order appointing Steinberg as Receiver, drafted and submitted by the SEC, stated the *status quo* would be maintained. DE 10, p.2; DE 18, p.3. Moreover, the SEC so falsely represented orally at the *ex parte* TRO hearing: "THE COURT: Aren't the Funds going to be shut down? MS. ZINN: Well, no, Your Honor." DE 20, p.18; *see* Lauer Decl. 9.

The claims presented by this motion are fundamental to the nature of the federal government and to the integrity and operation of the federal courts. The SEC, DOJ, and Receiver violated the Due Process Clause of the Fifth Amendment, Separation of Powers, and committed a fraud on the court. The judgment should be vacated under Rules 12(h), 60(b)(4) or 60(b)(6), and 60(d)(3), Fed.R.Civ.Proc., or for prosecutorial misconduct, and the complaint dismissed.

### E.

As collateral damage, each member of the unlawful *ad hoc* alliance waived its or his respective privileges by disclosing its or his purportedly privileged material to the other. Nothing of theirs is protected by the attorney-client or work-product privileges. The Supreme Court stated in *University of Pennsylvania v. EEOC*, 493 U.S. 182, 189 (1990):

Inasmuch as "[t]estimonial exclusionary rules and privileges contravene the fundamental principle that 'the public . . . has a right to everyman's evidence,'" [Trammel v. United States, 445 U.S. 40, 50 (1980)], quoting United States v. Bryan, 339 U.S. 331 (1950), any privilege must be "strictly construed." 445 U.S. at 50.

The SEC and Receiver each engaged in a classic waiver by revealing material to a third party not part of a bona fide attorney-client or pooled relationship. "The attorney-client privilege is waived by the client's voluntary disclosure or consent to disclosure of any significant part of the privileged communication or matter in a nonprivileged setting." Christopher B. Mueller & Laird C. Fitzpatrick, *Evidence* § 5.28, p.392 (5th ed. 2012). Common interest is not a separate privilege; rather, it is an exception to the waiver principle. *In re Pacific Pictures Corp.*, 679 F.3d 1121, 1129 (9th Cir. 2012); *In re Grand Jury Subpoenas*, 902 F.2d 244, 248-49 (4th Cir. 1990). "The burden is on the party claiming the privilege to establish that the communication was made in pursuance of a common interest." Mueller & Fitzpatrick § 5.15, p.345. The assertion by the Receiver and SEC of an all-encompassing privilege for all their communications requires that their legal interests be identical since they exclude no aspect of their activities from the asserted privilege. *Strougo v. BEA Associates*, 199 F.R.D. 515, 520 (S.D.N.Y. 2001), stated:

> The weight of authority suggests that the "common interest rule" can apply where parties are represented by separate counsel that engage in a common legal enterprise. . . . This version of the "common interest" doctrine has been described as follows:
>
>> A community of interest exists among different persons or separate corporations where they have an identical legal interest. . . . The key consideration is that the nature of the interest be identical, not similar, and be legal, not solely commercial.

See, e.g., *Fireman's Fund Ins. Co. v. Great American Ins. Co.*, 284 F.R.D. 132, 139-41 (S.D.N.Y. 2012); *Leader Technologies, Inc. v. Facebook, Inc.*, 719 F.S.2d 373, 376-77 (D. Del. 2010);

Applying these principles, a circuit court held there was an insufficient commonality of interests to justify a joint-defense or common-interest privilege for discussions between Hillary Clinton and her private lawyers in the presence of White House counsel, a particularly relevant precedent in view of the similar institutional considerations involved. *In re Grand Jury Subpoena*

*Duces Tecum*, 112 F.3d 910, 922 (8th Cir. 1997). The prosecutorial interests of the Office of Independent Counsel and the institutional interests of the White House were not the same, even though both were members of the Executive Branch and both were conducting or assisting overlapping investigations. The Court concluded:

> We have no doubt that the White House and Mrs. Clinton are concerned with understanding fully the facts involved in the OIC's investigation, nor that dividing responsibility between the personal attorneys and White House counsel can be a difficult task. . . . But these justifications amount to no more than an assertion that "we all want to obey the law." We do not believe the common-interest doctrine stretches that far.

Another held that the victim of crime "has no more of a common interest with the government than does any individual who wishes to see the law upheld." *In re Pacific Pictures Corp.*, 679 F.3d at 1129; *see United States v. Aramony*, 88 F.3d 1369, 1392 (4th Cir. 1996) (company and its head lack common interest); *United States v. Suarez*, 820 F.2d 1158, 1159-60 (11th Cir. 1987) (privileges are not favored and should be construed narrowly); *In re Grand Jury Subpoena*, 831 F.2d 225, 227 (5th Cir. 1987) (burden of proof on person asserting privilege); *In re Bevill, Bresler & Schulman Asset Mgmt. Corp.*, 805 F.2d 120, 126 (3d Cir. 1986) (same); *Ledbetter v. Farmers Bank & Trust Co.*, *supra*; *Henderson v. Holiday CVS, LLC*, 269 F.R.D. 682, 687-88 (S.D.Fl. 2010).

The SEC's and Receiver's unsuccessful efforts to prove their respective legal interests were identical in order to claim evidentiary privileges have established their violations of Separation of Powers and Due Process, which require vacating the judgment and dismissing the complaint.

### III.

If the Court is not prepared on the present record to grant Lauer the relief he seeks in any particular respect, Lauer requests that the Court allow him relevant discovery with respect to the SEC-DOJ-Receiver joint operation, including taking depositions of the Receiver and the SEC, their lawyers, and others who may have knowledge of facts relevant to the extent and nature of the SEC-Receiver jointly conducted effort against Lauer, and to secure relevant documentary

evidence, including emails and memoranda sent by and to the Receiver, the SEC and the DOJ, and any written agreements to which the Receiver is a party relating to their common effort mounted against Lauer. All privileges have been waived. Lauer also seeks discovery, initially from the Receiver, on *ex parte* contacts with the district judges. Lauer defers his request for discovery from DOJ, except for documents relating to the search and seizure from Lauer at the time of his arrest and to other communications between the DOJ and Receiver. In any event Lauer requests an evidentiary hearing at which he can subpoena and present evidence in the form of testimony and documents, along with argument.

Lauer also moves the Court to promptly enter an order directing the SEC and Receiver to preserve all documents relating to Lauer, Lancer Management, or the Funds, including, but not limited to (1) all communications, including emails and memoranda, between the SEC and the Receiver; (2) all of the SEC's internal emails and memoranda; (3) all of the Receiver's internal emails and memoranda; (4) and, in connection with *United States v. Lauer*, No. 08-Cr.-20071, S.D. Fla., all emails and memoranda between the Receiver and the DOJ relating to the indictment, prosecution, and activities of Lauer, Lancer Management, or the Funds.

WHEREFORE, the Court must vacate the judgment and dismiss the complaint pursuant to Rules 12(h), 60(b)(4), 60(b)(6), and 60(d)(3), Fed.R.Civ.Proc.

Respectfully submitted,

David M. Dorsen
Suite 500
2900 K Street, N.W.
Washington, DC 20007
Telephone: 202 204-3706
E-Mail: Dorsen35@aol.com
Attorney for Michael Lauer

Dated: October 25, 2013

## INDEX TO EXHIBITS

A.  Declaration of Michael Lauer                                                          22

B.  Receiver's Response to Defendant Michael Lauer's Motion for an Order Allowing
    the Parties to Take Discovery Solely Relating to Defendant's Motion to Vacate the
    Judgment, and Memorandum of Law, 3/21/13, *SEC v. Lauer*, Case No. 03-civ-
    80612-MARRA                                                                           23

C.  Receiver's Response in Opposition to Martin Garvey's Motion for Summary
    Judgment, 5/1/13, *Court-Appointed Receiver v. Lauer*, Case No. 05-civ-
    60584-MARRA                                                                           24

D.  Securities and Exchange Comm'n Opposition to Motion to Strike, 9/27/13, *SEC v.
    Lauer*, No. 13-13110-EE, 11th Cir.                                                  25

E.  Receiver's Response to Defendant-Appellant Michael Lauer's Emergency Motion
    To Strike or Deny Receiver's Motion for Leave to Intervene, 10/1/13, *id.*           26

F.  Deposition of Heidi Carens, 12/13/11, *Court-Appointed Receiver v. Lauer*, Case
    No. 05-civ-60584-MARRA                                                               27

G.  Deposition of Joseph Huard, 12/12/11, *id.*                                          28

H.  SEC Authorization Form in *SEC v. Lauer et al., supra.*                              29

I.  Complaint in *SEC v. Lauer, supra.*                                                  30